[S. F. No. 15051. In Bank.—April 30, 1935.]

ELMER PRICHARD KAYSER, Plaintiff, v. ALFRED WALTER GORMAN et al., Defendants.

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant, v. W. E. HILLS, as Receiver, etc., Respondent.

P. A. Bergerot and A. P. Dessouslavy for Appellant.

Albert A. Rosenshine, J. H. Hoffman and Rosenshine, Hoffman, Davis & Martin for Respondent.

CURTIS, J.—In this action, entitled *Elmer Prichard Kayser* v. *Alfred Walter Gorman et al.*, instituted for the purpose of dissolving a partnership consisting of said plaintiff, said defendant Alfred Walter Gorman and the ten other defendants, under the firm name of Gorman, Kayser & Co., for the appointment of a receiver and for the distribution of the assets of said copartnership to persons legally entitled thereto, respondent W. E. Hills was appointed receiver of the assets of said partnership. The appellant, the Bank of America National Trust and Savings Association, presented its claim against said partnership to said receiver, which claim said receiver refused to allow. Thereupon said claimant filed its petition in the Superior Court of the City and County of San Francisco, praying for the allowance of said claim. The receiver filed an answer to said petition, in which he denied that said partnership was liable to said bank in the amount claimed, or in any other amount. With his answer he filed a counterclaim against said bank for the sum of $14,943.69. There were afterwards filed by the bank an amendment to its petition and by the receiver an amendment and supplement to answer to the petition. The action was tried by the court without a jury. Upon practically all the controversial issues made by the pleadings the trial court found in favor of the receiver, and against the bank, and rendered judgment that the bank take nothing by its petition, and that the receiver recover on its counterclaim against the bank the sum of $14,943.69, together with interest on said sum from June 29, 1931, at the legal rate of interest, and for his costs. From this judgment the bank has appealed.

In July, 1926, Gorman, Kayser & Co. was organized as a corporation to deal in bonds and investment securities. Its founder was A. W. Gorman, a man then of large means who became its president and general manager. E. P. Kayser was vice-president, and his duties were largely those of an assistant in carrying out the policies adopted and approved by its president. Gorman owned forty-eight per cent of the stock of the corporation, and the balance was divided between some twelve to fifteen other stockholders, no one of whom owned any considerable number of shares. Some months prior to November 1, 1928, it was decided to change from the original business of the corporation to

the stock brokerage business, and to become members of the San Francisco Stock Exchange and the San Francisco Curb Exchange. As a corporation was not eligible to membership in those organizations, it was decided to disincorporate the corporation and form a copartnership. This plan was carried into effect. The corporation was disincorporated, and a partnership was formed consisting of Gorman, Kayser, and eight other stockholders, together with two other persons who had not been stockholders in the corporation. Gorman had a 47.5 per cent interest in the partnership, and the others lesser and various interests, no one of whom held more than a seven per cent interest in said partnership. The partnership retained the same name of the dissolved corporation. This partnership was evidenced by articles of copartnership of date October 31, 1928, and the court found that said partnership was formed on that date. In order to make this change from the corporation to the partnership structure, it was thought necessary to obtain the consent of all the stockholders of the corporation to secure the surrender of the shares of stock of each and every such stockholder. The stock of a number of the smaller stockholders who did not become members of the partnership was purchased from them. However, the stock of Charles J. Ebner, Jr., amounting to 150 shares, had been pledged by Ebner to the United Security Bank and Trust Company, together with certain stock of the Continental Investment Company, owned by Ebner, to secure the payment of a promissory note for $23,000, which sum Ebner had borrowed of said bank to purchase the stock of the Continental Investment Co. Ebner could not pay his note and the bank refused to surrender his Gorman, Kayser & Co. stock unless he paid his note or gave the bank additional security. Ebner desired to retain his interest in the business after the reorganization. For the purpose of securing a release of the stock, Gorman guaranteed the payment of Ebner's note to the United Security Bank and Trust Company by signing his name to a written guarantee of payment on the reverse side of the note. The stock was turned into the corporation and Ebner received his proportionate interest in the partnership, as represented by the value of this stock. Some time after its formation as a partnership, Gorman, Kayser & Co. became financially involved and as a result the proceedings referred to

at the inception of this opinion were instituted, in which said receiver was appointed to liquidate the assets of said firm. The United Security Bank and Trust Company became merged in the Bank of America National Trust and Savings Association, and the Ebner note became the property of said last named association. We will refer hereafter to the owner and holder of said note as the bank or the appellant, whether said note was at the time held by the original payee, or its subsequent owner and holder after said merger.

The claim of the bank against the receiver is based upon the written guaranty of Gorman to pay the note for $23,000 executed by Ebner in favor of the bank. The position of the bank may be best understood from the following allegation of its petition, "that said note was endorsed by and on behalf of, and as the act of, the partnership by causing, and that it did cause, the name of defendant Alfred Walter Gorman to be written on the reverse side thereof for and behalf of said partnership; that said endorsement was as follows: 'A. W. Gorman. For value received I hereby guarantee payment of the within obligation . . . A. W. Gorman'."

Upon the issue presented by a denial of this allegation by the respondent receiver, the trial court found "that said partnership of Gorman, Kayser & Co. never endorsed or guaranteed the promissory note set forth in the petition, and that said note was never endorsed or guaranteed by or on behalf of, or as the act of said partnership, and that said partnership never caused the name of defendant Alfred Walter Gorman to be written on the reverse side of said note for or on behalf of said partnership; but on the contrary, the said note was endorsed and guaranteed by and in the name of A. W. Gorman as the personal and individual act of said defendant Alfred Walter Gorman."

The appellant bank challenges the sufficiency of the evidence to support this finding, and advances the theory in support of its contention that in order for said partnership to be formed, it was necessary that the corporation be dissolved and that the dissolution of the corporation could not be effected and membership secured in the San Francisco Stock Exchange unless all of the stock was surrendered, and to accomplish this end Gorman guaranteed the note, and that he did so in the interest of and on behalf of the partnership and as the act and deed of the partnership. It is not con-

tended that at the time the guaranty was signed, there was any representation made to the bank or to any of its officials by Ebner, or Gorman, or by anybody connected either with the corporation or with the partnership that Gorman was acting for the partnership or was attempting to bind the partnership by his personal endorsement of the note. Neither is it contended that there was any meeting of the membership of the proposed partnership, or any general understanding or agreement among all its members, that Gorman should guarantee said note and that his guaranty was for the benefit of the partnership and that it should be binding upon the partnership, or upon its property.

In support of its contention that Gorman guaranteed said note for and on behalf of the partnership and as the act and deed of the partnership, the appellant relies on the evidence given by four witnesses. These witnesses are Charles J. Ebner, Jr., H. F. Sleeper, A. W. Gorman and John T. Irilarry, the latter the vice-president and manager of the bank at the time the guaranty was made, and who had charge of the matter at that time for the bank. We find nothing in the testimony of Ebner or Irilarry which in any way tends to prove that Gorman was acting for the partnership in guaranteeing the note. All that the witness H. F. Sleeper testified to was that Gorman told him that he was forced to endorse the note and that the obligation was one for the firm. Sleeper was a member of the corporation, and continued with the organization after it became a partnership. He testified that he had conversations with Gorman both before and after the note was endorsed, and that ''Mr. Gorman ran the firm; he endorsed the note; and that is all there is to it.'' In answer to a question on direct examination as to whether he or anybody else made any request or recommendation to Gorman to endorse the note, he stated, ''No, I didn't suggest that he endorse the note''. On cross-examination Sleeper stated, ''It was up to him (Gorman) whether he signed the note or not; he ran the firm''. The testimony of A. W. Gorman goes into all the details of the reorganization of the business structure from a corporation into a partnership. He testified that at a meeting of their stockholders of the corporation, at which were present all stockholders who afterwards became members of the partnership, the plan of converting the corporation into a partnership was discussed and decided upon, and he and E. P.

Kayser were directed to take steps for the conversion of the corporation into a partnership. This was held some sixty days prior to October 31, 1928, the date the articles of partnership were executed. No claim is made that Gorman was requested to guarantee said note, or that said note or the guaranteeing thereof was mentioned or referred to in any manner at said meeting. The substance of his further testimony is that they were able to get control of all the stock except the 150 shares owned by C. J. Ebner, which was pledged to the bank to secure Ebner's note for $23,000, and that much against his will and better judgment he finally agreed to guarantee the payment of his note, in order to release the 150 shares of stock so that the plan to form the partnership could be carried out. ▆ We might concede that his testimony, if accepted by the trial court, would have been sufficient to support a finding that the guaranty was made solely for the benefit of his associates in order for them to reorganize themselves into a partnership. Evidently the trial court did not accept his version of the transaction. It was for the trial court to weigh his testimony and pass upon its value as evidence. There were a number of reasons why the trial court was justified in scrutinizing his evidence with care, and if in its judgment it found his account of the transaction to be lacking in evidentiary value, to reject it. In the first place, Gorman was an interested party in this proceeding. Should he succeed in convincing the court that he was acting simply as the agent of an undisclosed principal, and thereby fix the liability for the payment of the note on to his principal, the partnership, instead of himself, he would reap a most material advantage. Then again, Gorman's testimony contained many inconsistent statements which greatly weaken it as a whole. We will mention but one of these statements. While, in his general statement, he insisted that he guaranteed the note for the partnership, and not for himself personally, yet in giving an account of how he happened to guarantee the note he gives the impression that he was doing it for the express purpose of helping out Ebner and keeping him in their organization, and not for the benefit of the partnership. His testimony on this phase of the case is as follows: ''Ebner came to me because Kayser spoke to him and Ebner spoke to me, and he was just checkmated; he said he did not know what

to do. He wanted to stay in the partnership, and he didn't want to take the proceeds from his corporation stock to pay for that note. They needed additional collateral, and not having that collateral, they broached the subject of my endorsing a note for Ebner in order to keep that—to keep his interest in the business intact.'' The trial judge was justified in drawing from this statement the inference that Gorman acted in this matter as a favor to Ebner and not on behalf of the plaintiff. It is true, in other parts of his testimony he denies that he was assisting Ebner, or had any intention of doing so, but the fact remains that his guaranty of the note was a most material benefit to Ebner, and his denial that it was done for that purpose cannot efface from the record the inference from his testimony just quoted. As a third and final reason which we will cite why the trial judge might well have looked with distrust upon the testimony of Gorman that in guaranteeing Ebner's note he was acting for the partnership and not for himself personally, might be mentioned the course of conduct pursued by the partnership after it began active business operations. As we have seen, Gorman's interest in the partnership far exceeded the interest of any of the other partners. He dominated the partnership, as he had the corporation before, and dictated its policy in all important matters. The evidence shows that the books of the partnership never showed the note of Ebner as a liability of the partnership, either direct or contingent. In all the financial statements made out by the partnership for the stock exchange and for the appellant bank, this obligation on the Ebner note was never listed, nor shown as a liability of the partnership. While it may be true that the omission of this liability from the financial statement and books of the partnership may not be evidence of the nonexistence of said liability, yet when we consider this omission in connection with the testimony of Gorman, who directed the preparation of these financial statements and the manner in which the books of the company were kept, it becomes quite a material factor in the case. There is a direct conflict, on the one hand, between Gorman's testimony that the partnership was liable on the Ebner note, and, on the other hand, the books of the partnership which were kept as directed by Gorman, and the financial statements prepared under his direction,

each of which showed no such liability. These and other reasons not necessary to mention may well have impelled the trial court to reject *in toto* the testimony of Gorman as to the reasons which prompted him to guarantee Ebner's note. The burden of proof was upon the appellant and without some substantial testimony in its behalf the trial court was in duty bound to deny it any relief. Practically the only testimony which would tend to prove that the partnership was bound by Gorman's guaranty was the evidence given by him, which the trial court was justified in rejecting, and which the findings show the court did reject.

In support of the finding of the trial court that the guaranty of Gorman was his individual act, and not the act of the partnership, the respondent relies upon the written instrument signed by Gorman in his individual name. It contains his individual promise, "I hereby guarantee the payment of the within obligation", and is signed "A. W. Gorman". The presumption is that a written instrument deliberately executed expresses the intention of the parties (*Mahoney* v. *Bostwick*, 96 Cal. 53, 58 [30 Pac. 1020, 31 Am. St. Rep. 175]; *Welk* v. *Conner*, 102 Cal. App. 286, 289 [282 Pac. 963]). This presumption should prevail unless the evidence offered to show a contrary contention is clear and convincing (*Mahoney* v. *Bostwick, supra*). It is for the trial court to determine if this presumption has been overcome (2 Cal. Jur. 933, 934). Evidently the trial court was not of the opinion that this presumption had been overcome by the evidence of the appellant, and as this question was for the determination of the trial court, its decision must be considered final.

There was also the testimony of Ebner and Irilarry. Instead of the testimony of these witnesses being favorable to the bank, we think, when taken as a whole, it supports the contention of the respondent. Ebner gave in detail an account of all of the transactions leading up to the signing of the note. His associates wanted all the stock in the corporation turned in to the corporation before they could form the partnership. He was unable to deliver his stock because of its pledge to the bank. He talked with Mr. Irilarry of the bank about getting an endorser on his note and the latter informed him that it would be satisfactory. He talked with Mr. Sleeper, who said they would

have to get Mr. Gorman to endorse for Ebner. Ebner later talked with Mr. Gorman about endorsing for him, and Mr. Gorman asked whether the bank would be satisfied with his endorsement, and Ebner replied that he would go over and see. He then interviewed Mr. Irilarry again and the latter informed him that Mr. Gorman's endorsement would be satisfactory. The final agreement of Gorman to endorse the note was secured in an interview between Ebner, Sleeper and Gorman. Sleeper said to Gorman, ''Al, you will have to endorse this note for Charley to get the note out of the bank''. Gorman said he did not want to endorse the note and would not. Sleeper said he would have to do so ''or we won't be able to get the stock out'', and Gorman replied, ''Bring over the note and I will endorse it''. Irilarry testified that when Ebner came to him regarding Gorman endorsing·the note he said, ''Jack, Al will endorse the note, will you take his endorsement and release the stock?'' to which he replied, ''I will, and subsequently Mr. Gorman came into the bank and endorsed the note, and we released the stock''. In all these conversations and negotiations as given by these witnesses, Ebner and Irilarry, not one word was said by any of them or by anybody else that Gorman, in guaranteeing the note, was acting for the partnership, or that the liability thus incurred was a liability of the partnership. Irilarry, who represented the bank in all of those negotiations, testified ''the mere fact that Gorman was going to endorse the note was sufficient for me. I didn't give a whoop whether it was for the firm or who it was for; I knew he had money in the firm; I knew he had outside assets.''

It is unnecessary to prolong this discussion of the evidence, as in our opinion there can be no question of its sufficiency to support the court's finding that said note was never endorsed or guaranteed by or on behalf of, or as the act of the partnership, but that ''said note was endorsed and guaranteed by and in the name of A. W. Gorman as the personal and individual act of said defendant Alfred Walter Gorman''.

In view of the conclusion just stated, it is not material whether Gorman was authorized by his associates to guarantee said note for the partnership. Upon this question there is a conflict in the evidence which, were we called upon

to decide it, would render it obligatory on our part to sustain the finding of the trial court that no such authority was ever given Gorman.

Considerable discussion is to be found in the briefs on file regarding the exact date when the partnership was formed, the bank claiming that the partnership was transacting business the date the note was endorsed, while the respondent contends that it was not formed until October 31st, which was three days after Gorman endorsed the note. The court found that the latter date marked the time when the partnership was formed. The articles of partnership bore that date and there was other evidence indicating that October 31st was the correct date, sufficient in our opinion to sustain the finding of the trial court.

The further contention is made that the trial court erred in sustaining the objection of respondent to certain questions asked A. W. Gorman as to his purpose or object in guaranteeing the Ebner note. Whether the court erred in sustaining this objection, we think, is immaterial, as this witness subsequently testified to the very same matters involved in the questions to which objections were sustained. It is true that the court criticized the manner in which this testimony was given, but we are not convinced that the trial court failed to give it the weight to which it was entitled, notwithstanding the irregular manner in which it was injected into the record.

Finally the appellant contends that the trial court erred in allowing the respondent interest on the amount of his counterclaim from June 29, 1931, the date on which the bank filed its claim with said receiver. It is contended that the receiver is not entitled to recover interest as the bank never contracted to pay interest. The interest awarded was by virtue of the statute and no express contract was necessary (Civ. Code, secs. 3287, 3302). The amount due on the counterclaim was fixed at that date, and under the sections cited the receiver was entitled to legal interest on the amount unpaid. Appellant cites and relies upon *Bank of America Nat. T. & S. Assn.* v. *California Savings & Commercial Bank,* 218 Cal. 261 [22 Pac. (2d) 704]. That motion was to recover a special deposit from a bank in liquidation, and it was held, in view of these facts, no interest should be allowed, as its payment would reduce the amount available to pay general depositors. The case has no application to

any question involved in the instant action. The further objections to that part of the judgment allowing respondent interest on the amount of interest are so lacking in merit that no useful purpose would be gained in their discussion.

The judgment is affirmed.

Shenk, J., Thompson, J., Preston, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.