[Civ. No. 5917. Third Appellate District.—February 10, 1938.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. J. OSCAR GOLDSTEIN, Appellant.

38

J. Oscar Goldstein, *in pro. per.*, and Grayson Price for Appellant.

Rich, Weis & Carlin, W. P. Rich, Richard H. Fuidge, G. D. Schilling, Louis Ferrari and I. A. Cereghino for Respondent.

THE COURT.—The defendant, J. Oscar Goldstein, has appealed from a judgment which was rendered against him in a suit to foreclose a trust deed executed to secure the payment of a promissory note of even date therewith for the sum of $3,682.54 and interest.

The appellant contends he is not liable for payment of this note because he was not the owner of the property, but held title thereto merely as trustee for his client who was the real owner of the land; that the note and trust deed were

given without consideration as a mere accommodation to the bank and to the owner of the lot, together with an accompanying oral agreement on the part of the payee of the note that the appellant would be held free from personal liability thereon; that the court erred in rejecting evidence of the alleged oral agreement relieving the appellant from personal liability on the note and abused its discretion in refusing to permit the appellant to amend his answer on the morning of the trial so as to allege fraud on the part of the bank in procuring the execution of the note and trust deed.

May 15, 1928, for an expressed "valuable consideration", Butte County Savings Bank, a corporation, conveyed to J. Oscar Goldstein, lot 5 of Evans tract of the Rancho Arroyo Chico, in section 16, township 22 north, range 1 east, in Butte County, California, according to the official map of that tract, number 67, on file in the office of the county recorder of Butte County. On the last-mentioned date, "for value received", the appellant executed and delivered to the bank his promissory note, due May 15, 1931, for the sum of $3,682.54, payable in semi-annual instalments of $100, together with interest at the rate of seven per cent per annum, which note was secured by a trust deed to the land above described. The note, in unambiguous language, free from conditions or qualifications, creates a clear obligation and promise on the part of appellant to pay the debt according to the terms of the instruments. The trust deed is drawn in the usual form. It refers to the note which recognizes the debt as the obligation of the appellant, and conveys the land as the property of the grantor to secure the payment of the note. It is not claimed either of these instruments contains any language which is obscure or uncertain. Neither instrument suggests that the appellant was not then the real owner of the land, or that he was to be held exempt from personal liability for payment of the entire note.

August 14, 1931, "for value received", the Butte County Savings Bank sold and transferred this note and trust deed to the respondent. It is conceded the respondent is the owner and holder in due course of the note and trust deed. The amount of unpaid balance on the note is not disputed. No part of the principal, and only the sum of $1,012 of the accrued interest was paid. The note was about to become outlawed. May 15, 1935, the plaintiff, therefore, brought this

suit to foreclose the trust deed. After demurrers to the complaint were overruled, separate answers of the respective defendants were filed on December 13, 1935. The answers deny the material allegations of the complaint. The appellant's answer affirmatively alleges that the note and trust deed were executed without consideration as a mere accommodation to his codefendant, W. V. Helphinstine, and to the Butte County Savings Bank; that the appellant was not the owner of the mortgaged land, but held title thereto merely as trustee of his said client who purchased the lot from the bank for $4,882.54, and that the appellant, at the request of the bank and Helphinstine accepted a deed to the land and executed the note and trust deed to secure the unpaid balance of the purchase price thereof, for the reason that the real purchaser of the lot was then in serious financial trouble. It was also alleged that as a part of the same transaction the bank assured the appellant he would be relieved of personal liability for the payment of the debt or the fulfillment of the obligations of the note and trust deed.

On the morning of the trial, July 1, 1936, the appellant, for the first time, asked permission of the court to file an amendment to his answer charging Guy R. Kennedy, as former president of the bank, who, at the time of the trial, was dead, with fraud in thus procuring the appellant to accept a deed to the land and execute his personal note and trust deed thereon to secure the unpaid portion of the purchase price of the lot, with the accompanying oral promise that he would be relieved from personal liability on that account. Notice of the hearing of this motion to amend the answer was not previously served on the plaintiff as required by section 473 of the Code of Civil Procedure. The plaintiff had no previous knowledge that the application would be made. The court denied the motion to amend the answer on the ground of lack of notice thereof, and because the proposed amendment tendered a new issue which the plaintiff was unprepared to meet at the trial. A motion to continue the time of trial was also denied. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff upon every essential issue in the case. Judgment for the principal amount of the note and accrued interest in the aggregate sum of $4,949 was rendered against the appellant, together with a decree of foreclosure of the

trust deed, to satisfy the judgment. After sale of the property $2,422.61 of the indebtedness remained unsatisfied. A deficiency judgment for that sum was entered against the appellant. This appeal was then perfected.

The judgment and findings are supported by the record. Oral evidence is competent to show a lack of consideration as between the original parties to a note. (Sec. 3109, Civ. Code; *Braselton* v. *Vokal,* 53 Cal. App. 582 [200 Pac. 670]; 19 Cal. Jur. 1027, sec. 169.) But, assuming that the appellant executed the note and trust deed as a mere accommodation to his client, Helphinstine, to secure the unpaid portion of the purchase price of the land, it nevertheless furnishes adequate consideration for the note to bind the maker thereof. There is no evidence the note was executed as a mere accommodation to the bank. It is not necessary that the consideration should pass directly to the accommodation maker of the instrument. (*Chambers* v. *Washam,* 113 Cal. App. 749 [299 Pac. 91]; sec. 3110, Civ. Code; 95 A. L. R. 972, note; 3 R. C. L. 927, sec. 123.) In the authority last cited it is said:

"The contract evidenced by a bill of exchange or promissory note imports a consideration . . . because of the negotiable quality of the instrument. Every person who appends his name to the paper is a party to it, and from its negotiable character each is an original undertaker. . . . Each name constitutes a direct original promise founded upon the same consideration. No consideration moving to one who becomes a party merely for accommodation is necessary to support his contract. To fasten liability upon an accommodation endorser it is not necessary that any consideration should move directly to him. The contract of such endorsement is supported by the consideration moving to the payee from the person to whom he negotiates the instrument. Nor is any consideration moving to the accommodation maker necessary to uphold an accommodation note; the consideration which supports the promise of the accommodation maker is that parted with by the person taking the note and received by the person accommodated."

Section 3110 of the Civil Code is conclusive of the liability of an accommodation maker of a note under the circumstances of this case. That section reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

■ Moreover, the appellant testified that he took title to the property which was mortgaged to secure the unpaid portion of the purchase price thereof, and partly as security for a debt of $3,200 due to him from his client, Helphinstine. That furnishes evidence of good consideration, as defined by section 1605 of the Civil Code, passing directly to the maker of the note. The appellant said: "Didn't you take the deed as part security for that [$3,200 debt, which Mr. Helphinstine owed to you]? . . . A. Unquestionably if there had been any equity in the property, if a man owed me money and it looked like there was anything at all, naturally I would have expected payment." He also wrote a letter to the plaintiff dated May 14, 1934, in which he stated that he held title to the property partly to secure the $3,200 indebtedness. It reads in part:

"I have been holding the legal title to the property solely in the nature of trustee for Mr. W. V. Helphinstine, *and also as security for an indebtedness due and owing from him to me in the sum of approximately $3,200.00*"

The finding that the note was supported by adequate consideration is sustained by the evidence.

■ The court properly sustained plaintiff's objections to the evidence which was offered for the purpose of proving an alleged oral agreement on the part of the president of the Butte County Savings Bank, at the time of the execution and delivery of the note and trust deed in question, to the effect that the appellant would be held harmless and that no personal liability would attach to him as a result of that transaction. That evidence was received subject to objections by the plaintiff on the ground that it was incompetent for the reason that it tended to vary the terms of the written instruments. The court finally sustained those objections and struck the evidence from the record. It is contended those rulings constitute reversible error. We think not. The rejected evidence of which the appellant primarily

complains consists of an alleged oral statement made at the time of the transaction in question, by Guy R. Kennedy, who was then president of the bank, but who subsequently died, to the effect that Mr. Goldstein, who executed the note and trust deed, would not be held liable for the obligation represented thereby. That evidence of an accompanying oral agreement tended to vary the terms of the written instruments. Both the promissory note and the trust deed declare in unambiguous language that Mr. Goldstein promised to pay to the bank the full amount of the obligation and that he is therefore personally liable therefor. That proffered evidence is incompetent. The appellant is estopped from contradicting the plain language of his note. (*Van Haaren* v. *Whitmore,* 2 Cal. App. (2d) 632 [38 Pac. (2d) 829]; *Lompoc Valley Bank* v. *Stephenson,* 156 Cal. 350 [104 Pac. 449]; *Koeberle* v. *Hotchkiss,* 4 Cal. App. (2d) 252 [40 Pac. (2d) 911]; 4 Jones Comm. on Evidence, 2d ed., 3002, sec. 1639; 95 A. L. R. 983, note; 54 A. L. R. 717, note.) In accordance with the rule excluding testimony of an oral agreement accompanying the execution of a promissory note which is unambiguous in its language with respect to the liability of the maker thereof, it is said in the headnote found in 95 American Law Reports, at page 983:

"The authorities are in substantial accord that an accommodation party cannot escape liability on his signature by showing that it was understood at the time of his signing the instrument that he would never actually be called on to pay it."

In the case of *Van Haaren* v. *Whitmore, supra,* which was an appeal from the judgment foreclosing a trust deed, under circumstances very similar to the facts of this case, the defendants contend, as does the appellant in the present case, that they did not own the mortgaged property but took the title thereto in trust for the Fruitvale Spiritual Church and that they signed the note without consideration. Oral evidence in support of those facts was admitted over objections and subsequently stricken from the record as tending to vary the terms of the written instrument. It was contended on appeal that the exclusion of that evidence constituted error. The court said:

"The rule is well established that extrinsic evidence is not admissible to avoid the liability of the maker of a promissory note who signs in his individual capacity, even though

he was acting in a representative capacity for another at the time, when the note is not uncertain, doubtful or ambiguous.''

In the last cited case, it is further said:

''Where, as here, it is contended that the note is not that of the defendants, but of another, it must appear from the instrument itself that the true object and intent of it are to bind the principal and not the person who signed the note, before he can escape personal liability. (*Hobson* v. *Hassett*, 76 Cal. 203 [18 Pac. 320, 9 Am. St. Rep. 193].) When the parties have deliberately put their agreement in writing, in such language as imports a legal consideration, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is there expressed. (*Lindemann* v. *Coryell*, 59 Cal. App. 788 [212 Pac. 47].) Since the defendants signed the note and wholly failed to indicate therein if they had a principal, or who or what the principal was, they have made themselves personally responsible for its payment.

''The contention that the defendants received no consideration for the note cannot be maintained. The plaintiff parted with the title to her property to them, and the detriment suffered by her in that behalf is sufficient, even though the defendants passed the title on to another without profit.''

The appellant did not have a right under section 472 of the Code of Civil Procedure, ''as of course'', or at all, to amend his answer on the morning of the trial of the cause without previous notice of his application therefor. The arbitrary right to amend an answer under that section, without the consent of court is limited to the time during which the plaintiff was entitled to demur thereto as provided by section 443 of the Code of Civil Procedure, which is within ten days after the service of the answer upon the plaintiff. (*Manha* v. *Union Fertilizer Co.*, 151 Cal. 581 [91 Pac. 393]; 21 Cal. Jur. 175, sec. 121.) In the Manha case, *supra*, it is said in that regard:

''An amended answer 'as of course' cannot be filed after a demurrer to the original answer has been disposed of, or after the time within which the plaintiff might have demurred, but did not, has expired. *It can thereafter only be allowed upon stipulation or by leave of the court.*''

Concurring in that opinion, Chief Justice Beatty said:

"I concur. As to the right of defendant to file an amended answer at any time before demurrer filed, it is sufficient for the purposes of this case to say that after an answer has been filed, and the issues so formed have been set for trial on a day certain, with the knowledge and acquiescence of the defendant, he cannot on the eve of the trial file an amended answer raising new issues without leave of the court.''

It follows that the appellant, under the circumstances of this case, was entitled to file his proposed amendment to the answer only by leave of court first secured pursuant to section 473 of the Code of Civil Procedure. ■■■ It is true that courts should be liberal in allowing amendments to pleadings in furtherance of justice when they may be authorized without prejudice to the substantial rights of others.

We are of the opinion the court did not abuse its discretion under the circumstances of this case in denying the appellant's motion to amend his answer to charge the Butte County Savings Bank with fraud in procuring him to take title to the land in question and to make and execute his note and trust deed thereon to secure the unpaid portion of the purchase price thereof.

The complaint was filed May 15, 1935. Upon application of the defendants their time to demur or answer was extended to October 15, 1935. Within that time their demurrer was filed. The demurrer was overruled and defendant's time to answer was extended. December 13, 1935, the appellant's answer was filed. The cause was set for trial for July 1, 1926. Without previous notice, on the morning of the trial, for the first time the appellant asked leave to file an amendment to his answer setting up the alleged defense of fraud on the part of the bank. The gist of that defense of fraud consists of allegations to the effect that the president of the bank, for its benefit, induced the appellant to take title to the land as trustee for his client, W. V. Helphinstine, because the client was financially embarrassed by the existence of several judgments against him, and that the appellant was persuaded to make and execute the promissory note and trust deed to secure the unpaid portion of the purchase price of the land, with the assurance on the part of the bank that the appellant would not incur personal liability thereby. This assurance constituting the alleged fraud was charged to

Guy R. Kennedy, the president of the bank. It is not alleged he had authority from the bank to waive personal liability of the maker of the note. Mr. Goldstein stated to the court in that regard:

"This creates a distinct issue upon the question of fraud, and very unfortunately I am obliged to bring into this matter, Mr. Guy R. Kennedy, now deceased, who was president of the bank *and of course attended to this transaction.*"

The appellant had six and a half months after filing his answer and more than a year after the complaint was filed within which to determine that he desired to defend against the foreclosure proceeding on the ground of fraud. At the time of the motion to amend the answer the plaintiff was present in court ready to proceed with the trial. No notice of the motion to amend the answer was previously served on the adverse party as provided by section 473 of the Code of Civil Procedure. It is reasonable to assume the plaintiff was not prepared to meet the new issue of alleged fraud. It had no warning to that effect. The court, in the exercise of its discretion, denied the motion to amend the answer on the ground that no notice had been previously served; that the appellant had not exercised due diligence in asking leave to amend his pleading; that the granting of the motion would be unjust to the plaintiff requiring it to meet the new issues without previous warning or preparation. On the ground of expediting the trial of the case, and because of the appellant's lack of diligence in presenting his motion, a continuance of the time of trial was also denied.

■ Such amendments should be freely granted in the interest of justice so as to hear and determine a cause upon every legitimate issue which may fairly be presented. (21 Cal. Jur. 183, secs. 127, 128.) But applications to amend pleadings under the provisions of section 473 of the Code of Civil Procedure are addressed to the sound discretion of the court. With that discretion of the court we may not interfere, unless it clearly appears that it has been abused. (*Williams* v. *Youtz*, 178 Cal. 107 [172 Pac. 383]; *Portuguese American Bank* v. *Schultz*, 49 Cal. App. 508 [193 Pac. 806]; 21 Cal. Jur. 181, sec. 126.) In determining whether the court abused its discretion in denying the appellant's motion to amend his answer, all of the facts with relation thereto should be considered. ■ The cause was pending since May 15,

1935. Several delays were granted by the court at the request of the appellant before the issues of the case were settled. His answer was filed six and a half months before the time set for the trial. During the entire time from the filing of the complaint, more than a year previously, the appellant, who is an attorney of ability, must have known he could escape from the liability created by the clear language of the note and trust deed upon which the action is founded only by pleading his alleged defense of fraud. No principle of law is better known to the profession than that which requires a defense of fraud to be pleaded and proved. The appellant must have been aware of the facts constituting his alleged defense of fraud because the promise of the president of the bank upon which he relies was asserted to have been made to him personally at the time of the consummation of the transaction. Certainly it was a lack of diligence, under such circumstances, to fail to ask leave of the court to amend the answer to set up so vital a known defense until the morning of the trial.

Moreover, without so deciding, it is doubtful whether the gist of the defense of alleged fraud which is set out in the proposed amendment would, if true, relieve the appellant from personal liability. It is clear from appellant's statement to the court that he relies on an asserted oral promise made to him by the president of the bank that he would not be called upon to pay the note and that no personal liability on account of his execution of the note and mortgage would attach. It is not alleged the president had any authority from the bank to relieve the maker of that or any other note from personal liability. In the absence of such authority, a president of a bank has no legal right to relieve the maker of an otherwise valid note held by it in due course from liability to pay the obligation. Such conduct would be a fraud upon the bank and upon its stockholders. It would upset the entire system of banking. In 4 Zollman on Banks and Banking, pages 259 and 260, sections 2233 and 2234, it is said:

"The release or composition of a debt is a matter peculiarly within the province of the directors. It affects, not only the prosperity of the institution, but its very existence. . . . No paper held by the bank can therefore be nullified or released without consideration and without the consent of the board of directors. . . ."

"Bank officers are engaged to manage the property of the bank, not to give it away, no matter how praiseworthy the object of the gift may be."

We are constrained to hold that it does not appear the court under the circumstances of this case abused its discretion in denying appellant's motion to amend his answer.

The judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1938.