[Civ. No. 14774.   First Dist., Div. Two.   Feb. 27, 1952.]

FRANK A. SILVA, Respondent, v. C. G. HOLME, JR.,
et al., Appellants.

462

J. LeRoy Wehr, Lewis H. DeCastle and Leslie Price for Appellants.

Harold F. Sawallisch and Timothy Crowley for Respondent.

NOURSE, P. J.—This is an appeal by the six defendants from a judgment in favor of plaintiff, Frank A. Silva, doing business under the name J & S Liquor Company, in an action on the following promissory note:

"$5,000.00 Oakland, California, May 29, 1946. Six months after date, for value received, we jointly and severally, promise to pay to J & S Liquor Co. or order, at Richmond, California the sum of Five Thousand Dollars, in lawful money of the United States, with interest thereon in like lawful money from date hereof until paid, at the rate of six (6) per cent per annum, said interest payable at maturity; and in case of default in the payment of said interest as the same shall become due, then such interest so in default shall be added to and become a part of the principal and thereafter bear the same rate of interest; and at any time during default in the payment of said interest as the same shall become due, the whole amount of said principal sum and interest, shall at the option of the holder of this note, become immediately due and payable without notice.

|  | C. G. HOLME, JR. |
|  | H. BICKLEHAUPT |
| Witness to signatures: | C. F. PHELPS |
| M. H. EZELL | LESTER A. HIGH |
|  | R. J. MULCAHY |
|  | FRANK E. COX" |

In January, 1946, the defendants were the members of the board of directors of Food Facilities, Inc., a California corporation working in the frozen food locker field, hereinafter called the corporation. The corporation needed additional funds for its operations but did not have an authorization from the Commissioner of Corporations for the issue of more stock. Two of the defendants Mr. Mulcahy and Dr. High approached plaintiff to obtain funds from him; they represented that after they would have received permission to issue stock plaintiff would get stock in the corporation for the amount he would provide and in the meantime it would be considered a loan. From plaintiff's confused and contradictory testimony it is evident that he did not form any clear idea who—either the corporation, all defendants or only those who approached him—would be considered to have received the loan, but he testified repeatedly that it was represented to him that the loan would be secured by a promissory note signed by "all the persons interested," "all the persons whose names now appear on it." In a similar manner funds were obtained from others not involved in this suit, the total amount obtained being approximately $30,000. Plaintiff provided $5,000; on January 3, 1946, he gave a check for that amount payable to defendant High on which plaintiff had written "Adv[ance] for investment for Locker Company, Food Facilities, Inc." The receipt signed for High by the witness Ezell, secretary of the corporation, stated that it was a temporary receipt for $5,000 received for the use of the corporation, a regular instrument to be furnished as soon as the lawyer would have it typed. According to the testimony of defendant High "things happened—didn't go right"; those who had provided funds were called in and given personal notes by the members of the board of directors. Plaintiff received his note, on which the action was brought, in a letter dated June 4, 1946, of Ezell as secretary of the corporation in which it is said that the note was in accordance with the agreement of May 31, 1946, which agreement is not further explained. In June, 1946, Dr. High and the members of the board of directors approached the witness Kelso to help them work out a reorganization or rehabilitation of the corporation which they said "had hit a snag." Kelso testified that the plan of rehabilitation on which he and the board of directors worked was that said old board of directors would make good a deficit of $25,000 in the assets of the corporation, if they were freed from the personal obligation of the

notes signed by them in an amount of some $29,000. Accordingly the holders of the notes were asked whether they would be willing to surrender the notes in consideration of a participation in bonus stock which the Corporation Commissioner would permit the corporation to issue as part of the reorganization and also to furnish some new capital by taking new common stock of the corporation. One holder who refused to give up his note was paid off.

It is the contention of all appellants that respondent agreed to surrender his note against participation in the bonus stock which was authorized by the Corporation Commissioner and that therefore the note was discharged by accord and satisfaction or novation. It is moreover contended by the appellant Bicklehaupt, who filed a separate brief, that so far as he was concerned the note was signed without consideration, that he signed the note after having been told and in the belief that it represented an obligation of the corporation for which he signed as director without personal liability, and that the note was void as part of an illegal transaction circumventing the prohibition of taking subscriptions for stock of a corporation prior to having applied for and secured a permit of the Corporation Commissioner. (See Corp. Code, § 25500.)

The court below found for plaintiff and against all the defenses stated, finding specifically that the defendants signed the note in their individual capacity and not as directors of the corporation and that there was no mention of this transaction in the records of the corporation. The court also made conclusions of law that the corporation had not assumed the personal liability of the defendants and that there was no accord and satisfaction nor novation.

■ Appellants' contention that there was as a matter of law discharge of the promissory note by accord and satisfaction or novation cannot be sustained. The evidence as to respondent's assent to the surrender of his note as part of the rehabilitation of the corporation is in substantial conflict. Appellants rely on the testimony of the witness Kelso to the effect that after the rehabilitation plan had been explained to respondent he consented to it and promised to mail $2,000 and the note and that he mailed the $2,000 but failed to surrender the note, and further, on the fact that on December 10, 1946, respondent together with twelve other persons signed an agreement consenting to abide by an allotment of the bonus stock among them to be made by Mr. Kelso and that

in May, 1947, respondent with the other authorized bonus participants signed, in accordance with a condition imposed by the Corporation Commissioner, a waiver of right to distribution of assets and to dividends until common shareholders would have received certain specified dividends and/or distribution of assets. However, respondent testified that his negotiations with Kelso related only to the furnishing of $2,000 new capital for which he was to receive and did receive common stock, that he did not agree to cancel the $5,000 note for participation in bonus stock and that the promise of Mr. Kelso that respondent would participate in the bonus stock was in connection with his taking $2,000 worth of common stock. The agreements signed by respondent with respect to bonus stock do not indicate what consideration entitled him to participate. Appellants also stress the fact that respondent according to his own testimony all along wished to receive stock for his $5,000. However, it is a reasonable inference from all the evidence that in accordance with the original plan respondent wished to obtain common stock for the $5,000 he contributed but that that plan had to be abandoned, that Kelso's rehabilitation plan differed essentially from the original plan and that respondent was free to accept it or not. It is not inherently improbable that common stock would be acceptable to respondent as consideration for the $5,000 furnished but not participation in bonus stock on which the rights to dividend and distribution of assets had been greatly restricted.

Respondent further points out that if the only consideration which respondent has given is the payment of money, the amended permit authorizing the issue of bonus stock does not authorize the issue of any bonus stock to him, because the permit authorizes it only "in consideration for services rendered," although the application for the amended permit had asked that it be authorized "for services and expenses." It is argued that according to section 1109, Corporations Code, "Money paid" and "Services actually rendered" are distinct types of consideration and that if stock would be issued for a type of consideration other than the one provided for in the permit the issue would be void, citing among other cases *Mannion* v. *Baldwin*, 217 Cal. 600 [20 P.2d 678] and *Blank* v. *Olcovich Shoe Corp.*, 20 Cal.App.2d 456, 462 [67 P.2d 376]. Appellants do not offer any refutation of this argument. However we need not decide the point as we are

bound at any rate by the factual decision of the trial court on the above conflicting evidence.

None of the contentions urged by appellant Bicklehaupt alone is meritorious. Similar defenses were proposed and rejected in *Crocker Nat. Bank of San Francisco* v. *Say,* 209 Cal. 436 [288 P. 69]. In that case the Crocker National Bank agreed to give a loan to the Valley Bank provided a note for the amount of the loan was signed by responsible directors of the Valley Bank. Defendants, stockholders and directors, signed the note. It was delivered and the Valley Bank received the amount of it. When defendants were sued after default, their defense that they personally did not receive any consideration was rejected on the ground that the detriment of the plaintiff in giving the money to the Valley Bank was adequate consideration. In our case also the detriment of plaintiff was sufficient consideration whoever was considered to have received the loan. If defendants were not the principal debtors they were liable as accommodation makers. (Civ. Code, § 3110; *Bank of America Etc. Assn.* v. *Goldstein,* 25 Cal.App.2d 37, 42 [76 P.2d 545].)

Next it was held in the Crocker case, that where the instrument did not show that defendant executed it for and in behalf of a principal (the Valley Bank), no extrinsic evidence was admissible to avoid the personal liability of the makers by showing that they signed as agents for the bank. Here as there the instrument does not show any evidence of an intention to. represent the corporation and no extrinsic evidence as to such intent should have been admitted. It must here be pointed out. that in the Crocker case, as in our case, plaintiff was the payee of the unnegotiated note. Even if under these circumstances evidence that appellant Bicklehaupt had signed induced by misrepresentation of third parties or excusable mistake was admissible, such cannot avail him. The court permitted introduction of such evidence and found against the defense, after defendant Bicklehaupt had testified that he thought he was signing the note as a director for the company as security until the time that stock would be issued and had only vaguely indicated that somebody in a meeting of some of the members of the board of directors, probably Mr. Ezell, explained that that was the meaning of the note. It is not true that said testimony stands uncontradicted and was binding on the court. The clearly worded note itself causes a conflict. ''The presumption is that a written instrument deliberately executed expresses the intention

of the parties [citations]. This presumption should prevail unless the evidence offered to show a contrary contention is clear and convincing [citation]. It is for the trial court to determine if this presumption has been overcome (2 Cal.Jur. 933, 934.) Evidently the trial court was not of the opinion that this presumption had been overcome by the evidence of the appellant, and as this question was for the determination of the trial court, its decision must be considered final.'' (*Kayser* v. *Gorman*, 3 Cal.2d 478, 486 [44 P.2d 1041].)

█ Finally the fact that the transaction between the parties violated the purpose of section 25500, Corporations Code, does not invalidate the obligation of defendants. ''The inhibitions of the Corporate Securities Act [citation] against sales of securities to the public without permits are meant to protect the public from imposition and deception—not primarily to benefit the seller. The seller and the purchaser are therefore in no sense *in pari delicto* where this provision is violated. The fact that the transaction may be void at the behest of the purchaser is not to allow a premium for real wrong done by the seller.'' (*Eberhard* v. *Pacific Southwest L. & N. Corp.*, 215 Cal. 226, 228 [9 P.2d 302]; *Western Oil & Ref. Co.* v. *Venago Oil Corp.*, 218 Cal. 733, 744 [24 P.2d 971, 88 A.L.R. 1271].) It is true that the buyer may be considered *in pari delicto* and not entitled to recovery where he is not induced to make the purchase, but is the one who takes the initiative notwithstanding knowledge of the illegality (*Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136 [130 P.2d 740]) but the evidence in this case shows clearly that members of the board of directors, because of the need of the corporation, took the initiative and invented the scheme used, whereas there is no indication that respondent knew that even with the device of a loan the transaction remained illegal. Respondent as a person intended to be protected and not considered *in pari delicto* will not be denied the aid of the court.

Judgment affirmed.

Goodell, J., and Patterson, J. pro tem., concurred.