[Civ. No. 6807. Fourth Dist. Aug. 2, 1962.]

MEADE HARGISS, Plaintiff and Appellant, v. ROYAL AIR
PROPERTIES, INC., Defendant and Respondent.

Hennigan, Ryneal & Nixen and Fred H. Ryneal for Plaintiff and Appellant.

Best, Best & Krieger and John D. Babbage for Defendant and Respondent.

SHEPARD, J.—This is an appeal by plaintiff from a directed verdict and judgment for defendant in an action to recover $43,396.34 allegedly advanced to defendant.

## FACTS

In general, the basic facts are not in serious dispute. Stating the facts as stipulated to or testified to by plaintiff, it appears that on March 11, 1956, plaintiff, Harold L. Heathman and Mrs. Esther Peister agreed to each put in $50,000 for the purchase and development of certain real estate. The purchase price was $235,000. These three parties will hereinafter, when spoken of together, be referred to as the partners. The original plan, according to plaintiff, contemplated six investors, each contributing $50,000. The other three investors were never brought in and no corporate stock was ever sold or issued to anyone other than Heathman, Peister and plaintiff. Plaintiff testified that he had no other understanding "than if we say 'well, let's put in ten thousand dollars apiece and do this, do that'—that was the only thing that was in my mind," and that profits and losses would be shared equally.

The partners together agreed to purchase said land and to form a corporation for the purpose of developing said land. On August 2, 1956, Heathman and Peister each repaid to plaintiff one-third of $10,000 theretofore deposited by plaintiff on said land and plaintiff gave to each a receipt the last clause of which reads as follows: ". . . it being understood and agreed that said Harold Heathman, Esther Peister and the undersigned are equal partners in the purchase of said real estate."

Corporate formation was completed September 11, 1956, and that corporation is the defendant herein. Prior to said incorporation, each of the partners contributed $23,396.43 toward the purchase price, title documents were placed in escrow and ultimately title was taken in the name of defendant. Thereafter, the partners each contributed to the corporation an additional $15,000. On March 15, 1957, notes in ordinary promissory form were issued to each of the partners for the amount of said advancements, one being dated September 1, 1956, and being for the sum of $23,396.43 and one dated February 1, 1957, for $15,000, each providing for 5 per cent interest per annum and attorney fees on suit, but the printed body of each note being preceded by the typed words, "To Be Replaced By Stock And Or Notes." Plaintiff

testified that they were prepared at his suggestion and the above-quoted words were inserted at his direction. Plaintiff was then the president of the defendant and he signed all the notes as president with Peister signing as secretary. The notes were authorized by the defendant's board of directors, who are the partners, except as to Heathman's son; he had no financial interest in the venture or corporation.

Minutes of a meeting purporting to have been held March 31, 1957, recite, *inter alia*, that it was held to consider the problem of the debt to each partner in the amount of $38,396.34, the value of the notes, the price at which stock should be sold and an application for a permit to sell and issue stock; that the money was loaned to defendant for purchase of land and improvements thereon; that it is proposed to pay the notes by issuance of stock at $100 per share or 384 shares to each partner; and that a permit from the Corporation Commissioner be applied for such purpose. All directors signed a waiver of notice of and consent to such meeting. Plaintiff is recorded as presiding. No dissenting vote is noted and plaintiff does not claim there was one. Plaintiff testified that no formal meeting as described in the minutes was in fact held but does not suggest that the minutes do not express the intent of all parties.

On April 5, 1957, pursuant to the said authority of March 31, 1957, plaintiff as president and Peister as secretary, acting for defendant, applied to the Commissioner of Corporations for a permit to issue one class, no par value, common stock to each of the partners. In said application it is recited, that, "That Applicant proposes to sell and issue to Meade Hargiss 384 shares in payment of the principal indebtedness of the corporation to Meade Hargiss, amounting to $38,396.34"; and the same number of shares for the same monetary contribution, to Heathman and Peister each. As above noted, on April 5, 1957, each of the partners advanced to defendant an additional $5,000. Plaintiff was asked, "Was that $5,000 contributed to the corporation in accordance with your pre-existing arrangement that you all would contribute equal sums?" Plaintiff answered, "Yes, I think we could say that, Mr. Babbage."

This $5,000 was not mentioned in the minutes of the meeting of March 31, 1957. No written agreement respecting said $5,000 was signed at or after the date of its contribution.

Some differences arose between plaintiff and the other partners over construction expense and about April 12, 1957,

the directors, by majority vote, replaced plaintiff as president by Heathman. Plaintiff claims that the others had orally agreed that he would remain president for two years. In any event, plaintiff promptly notified defendant and the Corporation Commissioner that he refused to accept stock for his notes. The other two partners accepted the stock allotted to them. There is some confusion in the testimony as to whether or not a formal tender·of the stock was ever made to plaintiff. No other stock was sold. Heathman's son was one of the named incorporators but had no actual financial interest. The record at various places shows an unexplained difference of nine cents in the total debt. *De minimis non curat lex* applies.

Thereafter, plaintiff's complaint in action No. 1730 was filed, seeking in three causes of action, based on the $23,396.43 note, the $15,000 and the $5,000 advance of April 5, 1957, respectively, judgment against defendant for $43,396.43, interest, costs and counsel fees. A cross-complaint for declaratory relief was filed by defendant. After trial by jury the court directed a verdict that plaintiff recover nothing. The cross-complaint was dismissed on motion of cross-complainant. Judgment was entered for defendant pursuant to the directed verdict and plaintiff appeals.

### PLAINTIFF CANNOT RECOVER

 Plaintiff first contends that a corporation which issues a note for money received prior to obtaining a permit to issue stock, containing the language, "To Be Replaced By Stock And Or Notes," has violated the Corporate Securities Act.

It is true, of course, that such a purported agreement might well be a violation of section 25500 of the Corporations Code if the proposed purchaser was not one of the original organizers of a closed corporation under the particular circumstances here present. (*Miller* v. *California Roofing Co.*, 55 Cal. App.2d 136 [130 P.2d 740]; *Stonehocker* v. *Cassano,* 154 Cal. App.2d 732 [316 P.2d 717].)

However, section 25102, subdivision (c) provides exemption for "Promissory notes, whether secured or unsecured . . . where the notes are not offered to the public, or are not sold to an underwriter for the purpose of resale."

As was said in *Holmberg* v. *Marsden,* 39 Cal.2d 592, 597 [248 P.2d 417], "Whether the three men, as among themselves, be termed partners, joint venturers, or copromotors

of a corporation [citations], it is obvious that the trial court was justified in concluding that they stood on an equal footing as entrepreneurs. It is significant that it was only after the financial outlook began to worsen that plaintiff sought to recover his contribution. There appears no more reason for defendants to reimburse plaintiff for his contribution to the venture than for plaintiff to reimburse defendants for theirs. At the time of trial defendants were still devoting their time and energies to operating the business for the benefit of all three owners, which included plaintiff.''

If therefore the trial court took the position, as it was fully entitled to do under the undisputed facts, that this enterprise was, as to the three partners, a joint venture, partnership or copromotion of a corporation, it was exempt from the provisions of the Corporate Securities Act respecting the point made by plaintiff. The three were equal owners; there was no stock offered to nor sold to the general public; the notes were not offered to the public nor to an underwriter. The corporation was formed within 90 days after the meeting of August 2, 1956. There appears to have been no contention made to the trial court that the application for permission to issue stock was not made within a reasonable time after incorporation.

Thus the corporation was simply the *alter ego* of the three partners as the vehicle by which their enterprise was finally put into legal form for organization purposes. Of course, had outsiders actually been brought in and stock subscribed to or sold to them the legal picture, as to such outsiders, would have been entirely different. But that did not happen.

On the other hand, if the trial court took the view that the transactions involved violations of Corporations Code sections 25102 or 25153 or both, it is difficult to understand how plaintiff could avoid the position of being *in pari delicto.* He was the original moving spirit in the entire enterprise. Everything done prior to April 12, 1957, was under his guidance and direction. At his own insistence he was president of defendant. If there were violations he was the one who urged them. These facts are all uncontradicted. Both Heathman and plaintiff each testified for himself that he suggested the form and wording referred to but neither denied that the other did not also so suggest. As was said in *Domenigoni* v. *Imperial Live Stock etc. Co.,* 189 Cal. 467, 475 [209 P. 36] in discussing an erroneous finding by the trial court,

''But it does not follow that the plaintiff was entitled to

any relief. The entire transaction was an attempt to circumvent the law. The notes and agreements were each of them made in violation thereof and are therefore against the policy of the law, as he claims, and void. He was a party to them and is equally guilty with the defendant. In such a case the court will give no relief even if the point is not raised by either party.''

And in *Wells* v. *Comstock,* 46 Cal.2d 528, 532 [3, 4, 5] [297 P.2d 961], ''As in any other case of illegality which renders a bargain unenforceable, 'The courts will leave them where they were when the action was begun.' [Citation.] And illegality which renders a bargain unenforceable has that effect whether the evidence of the illegality is produced by plaintiff or by defendant [citation] and whether or not the question of the effect of the illegality is raised by either party. [Citation.]

''The policy against enforcement of illegal bargains (except in situations where the illegality of one party is less than that of another, or there are special circumstances not here present) is thus explained in the Restatement of the Law of Contracts, section 598, comment a: 'the rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages. That in itself would generally be a desirable thing. When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief.' ''

Under the facts presented in the case here at bar it is apparent that if plaintiff had the right to recover, then Heathman and Peister had the same right. No outside investors are involved. Nothing in the evidence shows any greater equities in favor of plaintiff than exist in favor of Heathman and Peister. If any recovery should be had by plaintiff it should be had through an action for dissolution and accounting as between the partners so that all may be treated with equality. To allow plaintiff to recover a separate judgment under the circumstances here present would work a gross inequity to the other partners. If plaintiff is innocent of any conspiracy to violate the Corporate Securities Act, then the evidence certainly could not be said to convict the other partners. The finger of suspicion in that respect, if it points at all, points most strongly at plaintiff.

As was said in *Hillman* v. *Hillman Land Co.,* 81 Cal.App.2d 174, 183, 184 [5], and [6] [183 P.2d 730],

"Although a corporation is usually an entity separate and distinct from its stockholders, having separate and distinct liabilities and obligations, yet when it is necessary to redress fraud, to protect the rights of third persons, *or to prevent injustice,* both the law and equity will cast aside the legal fiction of individual corporate existence as distinguished from those who own its capital stock and deal with the corporation and its stockholders as identical entities with identical duties and obligations. A corporation may be but the mere instrumentality through which, for their convenience, the individuals who own all the capital stock transact their business. Looking to substance rather than to form the law and equity will hold the corporation obligated for the acts of the sole owners of its stock. . . .

"Where a corporation is the instrumentality of individuals who control the conduct of its affairs and where the interests of third parties are not affected, the corporation is treated as the mere agency of the associates created for the sake of convenience in carrying out an agreement made before the corporation was organized." (Italics ours.)

Here, there were only two possible views to take. Either the entire transaction was valid, the corporation being a mere vehicle for the accomplishment of the partners' business venture, the notes being mere memoranda of the equal investment of each party and the stock serving the same purpose or there was an unlawful agreement to violate the Corporate Securities Act with plaintiff acting as the instigator of the whole plan, the prime mover in its operation, the president of defendant, the person who signed the original receipt, called and presided over the meeting authorizing the notes, signed the notes, called and presided over the meeting authorizing the application for permission to issue stock in equal amounts to each partner in extinguishment of the notes and himself signed such application for such permit.

The purpose of the Corporate Securities Act is to protect innocent investors. (*People* v. *Syde,* 37 Cal.2d 765, 768 [1] [235 P.2d 601].) It was never intended to be used as a sword by which a person fully as culpable, if not more so, than his partners, might, through affirmative court action, gain unfair and unconscionable advantage over his partners in a business venture. (*Silva* v. *Holme,* 109 Cal.App. 2d 461, 467 [5] [241 P.2d 21] ; *People* v. *Hoshor,* 92 Cal. App.2d 250, 254 [4] [206 P.2d 882] ; *People* v. *Craven,* 219

Cal. 522, 525 [3] [27 P.2d 906]; *Sargent* v. *Coppage,* 47 Cal. App.2d 122, 124 [1] [117 P.2d 412]; *Eberhard* v. *Pacific Southwest L.&M. Corp.,* 215 Cal. 226, 228 [1] [9 P.2d 302]; *Randall* v. *California L.B. Syndicate,* 217 Cal. 594, 598 [2] [20 P.2d 331]; *Michell* v. *Grass Valley Gold Mines Co.,* 206 Cal. 609, 615 [3] [275 P. 418]; *Campbell* v. *Julian Merger Mines,* 111 Cal.App. 649 [295 P. 1040].) We cannot find any proper analogy between the facts of the case at bar and the facts giving rise to the language in *Tatterson* v. *Kehrlein,* 88 Cal.App. 34 [263 P. 285], *Walker* v. *Harbor Realty etc. Corp.,* 214 Cal. 46 [3 P.2d 557], or *Western Oil etc. Co.* v. *Venago Oil Corp.,* 218 Cal. 733 [24 P.2d 971, 88 A.L.R. 1271]. Courts do not interpret laws to *create* wrongs but to *redress* them.

We cannot conceive of an approved rule of law which, under such circumstances, would countenance placing a greater onus of culpability on Heathman and Peister than on plaintiff. The only proper way for the parties to untangle their property relations would be in an action to dissolve the venture and for an accounting and equitable distribution of the assets. We are satisfied that the trial court's action in directing a verdict for defendant was correct.

What we have said necessarily disposes of all other points and renders their discussion unnecessary.

There is no right of appeal from a verdict. (*Neyens* v. *Sellnow,* 202 Cal.App.2d 745 [21 Cal.Rptr. 151].) The attempted appeal therefrom is dismissed.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.