[Crim. No. 2283.   Second Appellate District, Division One.—February 27, 1933.]

THE PEOPLE, Respondent, v. W. G. SHAFER, Appellant.

R. T. Lightfoot for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

HOUSER, J.—On each of five counts contained in an information filed against him, defendant was convicted of the offense of "violation of the Corporate Securities Act" (Stats. 1917, p. 673, as variously amended). From the ensuing judgment, as well as from an order by which his motion for a new trial was denied, defendant has appealed to this court.

It appears that defendant was the owner of a certain patent-right which related to an amusement device, and that, without first having procured a permit from the commissioner of corporations so to do—as evidenced by an instrument in writing—defendant sold to each of several persons a 1/100 interest in said patent-right, and that one of the provisions of said instrument of sale was the following:

"It being understood for the purpose of this agreement that 1/100 shall be of the value of Five Hundred and No/100 ($500.00) Dollars. And it being further understood that this agreement shall entitle the party of the second part to participate to the amount of his or her interests in any future enterprises of any nature whatever which may grow out of or arise from said invention or any letters patent which may be issued thereon in the United States of America only."

The prosecution of defendant was based upon the contention that, without first having obtained the required permit

76

so to do, under the condition expressed in said instrument the sale of an interest in the patent-right constituted a violation of that portion of the act which in substance forbids the issuance of a "certificate of interest in any profit-sharing agreement".

■ Appellant first contends that the evidence was insufficient to support the judgment for the reason that the prosecution failed to show that at the time the assignment was made any profit-sharing enterprise based upon the patent-right was in existence. But in terms, the statute contains no such requirement. On the other hand, the lack of necessity of a present existence of an enterprise from which profits are or may be expected is indicated in the provision in the statute (sec. 2) that "words used in this act in the present tense include the future as well as the present". (See, also, *People* v. *Oliver*, 102 Cal. App. 29, 36, 37 [282 Pac. 813], and authorities there cited.)

■ Appellant also contends that the quoted provision contained in the assignment to the effect that the assignee was entitled to participate "in any future enterprises" which might "grow out of or arise from said invention", was superfluous for the reason that "the law would have given that right, even if no statement in that regard had been made". It is clear that to a limited extent an assignment of an interest in a patent-right ordinarily would carry with it the proportionate right to participate in any profit which might result either from a resale of the patent-right, or from any royalty which might be paid to the owners of the patent-right by a manufacturer of an article or device to which the patent-right related. But an examination of the language of the provision in question discloses that its scope embraces much more than a mere resale of the patent-right to some third person, or the payment of a royalty by any person who might be duly authorized to use the patent-right in the manufacture or sale of the device described in the letters-patent. By its terms, the provision includes "*any* future enterprises *of any nature whatever,* which may grow out of or arise from said invention". Clearly such language is sufficiently inclusive to embrace not only the manufacture of the patented device, but as well its actual operation;—to say nothing of the "enterprises" which in the manufacture of the device might be regarded

as basic; and it is possible that, having been manufactured, the device to which the patent-right relates would find a ready sale and thus afford a financial profit to the owners thereof. Again, assuming that the owner of an interest in a patent-right would be entitled to participate in any profits which might arise either from an outright sale thereof to a third person, or from any royalty which might accrue by reason of the permissive use of such patent-right, certainly in the absence of some agreement to that effect such owner would not be entitled to participate as a profit-sharer in any and all enterprises which might result from ''such invention''. For example, in pursuance of the use of the patent-right by an authorized third person, although the owner of the patent-right might become entitled to a royalty, ordinarily, in the absence of express stipulation to that effect, he would not be entitled to any part of the net profits which might arise from the manufacture and sale of the patented device. Nor, in similar conditions, having been manufactured and sold, would the patentee be entitled to share in any of the profits which might result from the operation of the device. However, the right to participate in ''any future enterprises of any nature whatever which may grow out of or arise from'' the patent-right, a part of which was assigned by defendant, was included within and was a part of the sale made by him. We think it manifest that the right thus assigned was far greater than that which, in the absence of the all-inclusive language of the assignment, would have passed to the assignee by operation of law.

      Appellant urges the point that he was not ''an issuer of any security''; and consequently that no criminal offense was committed. In that regard, no question is raised as to whether the assignment made by defendant of the interest in the patent-right constituted a ''security'' within the intent of the statute. It is argued by appellant that since the patent-right was originally created by the United States government, any division of that right would not result in the issuance of a security. But even assuming (without deciding) the correctness of the position thus taken by appellant, it is apparent that a conclusion in favor of his contention in that regard would not relieve him from the consequence of his act. He does not go far enough in his statement of facts. His alleged offense consisted, not

necessarily in that he separated the patent-right into several parts and then sold such divided interests; but that in connection with such sale, in violation of the terms of the statute, he issued a "security" in that he executed a "profit-sharing agreement" without first having obtained from the constituted authority a permit so to do. The division of the original patent-right into fractional parts, the sale thereof, together with the additional right conferred upon the purchaser of participation by him "in any future enterprises", etc., was no part of any original creation by the United States government, but was solely the act of defendant;—from which it follows that his point cannot be sustained.

Finally, appellant asserts that prejudicial error was committed by the trial court in the admission of "evidence in parol to vary the terms of the assignment". In that connection, it is claimed that some confusion existed in the mind of the trial judge as to the theory on which the questioned evidence was admitted. However that may be, it is clear that, although the "theory" on which evidence may be admitted may be untenable, if the admitted evidence be relevant and material to the issue, its reception on a wrong theory will not be prejudicial. In the instant matter the evidence to which attention has been directed more particularly related to a determination of the intention of defendant in the premises. If it is a fact that the language of the assignment is perfectly clear and that no evidence was necessary to explain it, nevertheless, if the evidence threw some light on the purpose and intent of defendant, no error was committed. In other words, if the language was free from ambiguity, it would seem plain that defendant had violated the provisions of the statute as hereinbefore set forth. On the other hand, if in fact the language employed in the instrument was susceptible of two or more constructions, each differing from the other, or from each of the others, then not only was the evidence proper for the purpose of ascertaining the sense in which the language was used, but as well for the purpose of establishing, if possible, the guilty intent of defendant.

No prejudicial error appearing in the record, it is ordered that the judgment and the order by which the motion for a new trial was denied be and the same are affirmed.

Conrey, P. J., and York, J., concurred.