[Crim. No. 3660. In Bank.—December 15, 1933.]

THE PEOPLE, Respondent, v. J. M. CRAVEN, Appellant.

Rex B. Goodcell, Manley C. Davidson and Joseph H. Grossman for Appellant.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and Seibert L. Sefton and Ralph O. Marron, Deputies Attorney-General, for Respondent.

CURTIS, J.—The defendant was indicted for the violation of the Corporate Securities Act in that he sold interests in oil and gas leases without a permit from the corporation commissioner. The indictment contains seven counts, and he was found guilty upon five of such counts, namely, counts I, II, V, VI, and VII. The defendant stipulated that he knowingly sold and issued the certificates of interest in the oil and gas leases in question and that he had not secured a permit therefor from the commissioner of corporations. The five certificates of interest in the oil and gas leases sold by the defendant were similar in form and substance. They all recited that the defendant is the owner of an oil and gas mining lease covering certain land described therein, and that for the consideration of one dollar, the defendant sold and conveyed to the purchaser a fractional interest in the oil and gas produced and saved from said land. Under each of the five counts it was shown that the defendant had secured a lease upon certain supposedly oil-bearing lands, under which he was entitled to receive seven-sixteenths of all oil and gas produced and saved on the leased property, and in each of said·certificates issued and sold by defendant, the interest sold was described as a fractional interest in and to seven-sixteenths of all oil and gas saved and produced from said real property. It was stipulated that the interests sold under counts V, VI, and VII were in property yet undeveloped for oil and gas. The case was tried by the court without a jury, and resulted, as stated above, that defendant was

found guilty on five of the counts of said indictment. Defendant has appealed.

The defense of the defendant as to all of said charges was and is that he was the owner of the leasehold in question in which he sold and issued certificates of fractional interests, and that said sales were made by him as an individual, and that the Corporate Securities Act either regulating or prohibiting sales of that character is unconstitutional, and for that reason said act is to that extent void.

It might be well to briefly refer to certain provisions of the Corporate Securities Act which the prosecution relies upon as applying to and governing the question presented herein.

The sales involved in counts I and II were made in the year 1930, and were, therefore, subject to the provision of the act as amended in 1929. (Stats. 1929, p. 1251.) Subdivision 7 of paragraph (a) of section 2 of said act as amended in 1929 provided as follows:

"The word 'security' shall include any . . . certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas or mining lease . . . or beneficial interest in title to property, profits, or earnings."

The sales involved in the three other counts were made in June, 1929, and were subject to the provisions of the Corporate Securities Act as amended in 1925. (Stats. 1925, p. 964.) Paragraph 8 of section 2 of the act as amended in 1925 provided as follows:

"The word 'security' in so far as it applies to 'individuals', includes: (a) Any instrument offered to the public by an 'individual' evidencing or representing any right to participate or share in oil, gas or other hydrocarbon substances or other minerals of any sort, as yet undeveloped, or in the proceeds of sale thereof."

■ Under either of these provisions of the statute, there can be no question but that the certificates of interest sold by the defendant were securities. We do not understand that the defendant contends otherwise. His defense is based upon the contention that the property sold by him, as represented by these certificates, was his individual property, and that the provision of the Corporate Securities Act prohibiting an individual from disposing of his own

property is unconstitutional and void. These provisions of the act are section 3 (Stats. 1917, p. 673) and subdivisions 3 and 6 of section 2 (Stats. 1929, p. 1251) and read as follows: "Section 3. No company shall sell or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the Commissioner (of corporations) a permit authorizing it so to do." "Section 2 (3). The word 'company' includes all domestic and foreign private corporations . . . and partnerships of every kind, trustees as hereinafter defined, and also individuals as hereinafter defined." "Section 2 (6). The word 'individual' in so far as it is included in the definition of a 'company' includes only persons selling, offering for sale, negotiating for the sale of, or taking subscriptions for any security of their own issue."

 Under these sections of the act it is clear that an individual, as well as a company or corporation, is prohibited from selling or negotiating for the sale of any security of his own issue. The evidence in the case clearly shows that the certificates of interest in the leases which were sold by defendant were of his own issue, he having executed and delivered said certificates as completely and effectively as a corporation would issue its shares of stock. There would have been no practical difference in so far as the transaction might affect the public had the defendant formed a corporation, sold to it his leases in exchange for its stock, and then sold this stock without securing a permit. This was the course followed by the defendant in *People* v. *Smith,* 111 Cal. App. 177 [295 Pac. 105], which was held to be a direct violation of the penal provisions of the Corporate Securities Act. The purpose of this act is to protect the public against the purchase of spurious and worthless securities, and to make it more effective the legislature in 1923 extended the scope of the provisions to include individuals as well as organizations of individuals such as copartnerships, joint stock companies and corporations (Stats. 1923, p. 87). Defendant contends that in doing so the legislature exceeded its powers and thereby infringed upon the constitutional rights of persons to freely enjoy, possess and dispose of property acquired or owned by them. Defendant relies in support of this con-

tention upon the following authorities: *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089] , *People* v. *Lesser,* 123 Cal. App. 489 [11 Pac. (2d) 668], and *Buttrick* v. *Seines,* 209 Cal. 567 [289 Pac. 616]. These cases are not controlling, as we will proceed to show. The first two cases relied upon by defendant involved the sale of stock in a corporation by the defendants who individually owned said stock, and who sold the same without securing a broker's license to make such sale. While the provisions of the Corporate Securities Act (Stats. 1923, p. 87; Stats. 1929, p. 1251) in effect at the date of said respective sales required an individual to secure such a license before selling his personally owned securities, the sections contained an express exception providing that any owner of any security who was not the issuer or underwriter thereof was excepted from the provisions of said section. In neither of these two cases was the defendant either the issuer or the underwriter of the shares of stock which he was charged with selling. He had simply purchased the stock in the usual and ordinary course of business, and was proceeding to sell the same in the same manner in which he had acquired it. The court in neither of those cases decided that an issuer of securities, even though he was the *bona fide* owner of the same, was not subject to the requirements of the Corporate Securities Act, requiring that such owner should secure a broker's license before making sale of such securities, as no such case was before the court on either occasion. It is true that the court in the opinion in each of those two cases had much to say regarding the constitutionality of an act which would require a *bona fide* owner of securities to secure a broker's license before he could legally sell the same, but, in our opinion, what was said by the court in that regard was not necessary to the decision in either case, nor was it applicable to the facts then before the court.

The decision in *Buttrick* v. *Seines, supra,* involved the sale of a security by an owner who was also an issuer without securing a permit so to do. But this sale was made under the 1917 Corporate Securities Act, and, as we have seen, it was not until 1923 that an individual issuer of securities was required to secure a permit from the corporation commissioner before he could make a legal sale of his securities. It is true that in the opinion in *Buttrick*

v. *Seines, supra,* the case of *People* v. *Pace, supra,* was cited in support of the proposition of law that the defendant in that case was not guilty of any violation of the Corporate Securities Act by transferring a fractional interest therein without securing from the corporation commissioner a permit to make such a transfer. As the opinion points out, the transfer involved therein was made under the law then in effect which was passed in 1917, and which did not require an individual issuer of securities to secure a permit to make transfers thereof. All that *Buttrick* v. *Seines, supra,* holds is that, under the law in effect at the date of the sale involved therein, an individual issuer of a security was not required to secure a permit from the commissioner of corporations before he could legally sell such a security, for the reason that the law as then in force did not apply to individual issuers of security. These cases upon which the appellant relies, therefore, have no application, and are in no manner controlling the case now before us. On the other hand, there are decisions in this state directly in point which sustain the provisions of the Corporate Securities Act requiring an owner who is also an issuer of securities to secure a permit from the corporation commissioner before he can legally sell or negotiate the sale of such securities. We refer to the following decisions of the District Court of Appeal: *People* v. *Smith, supra, Black* v. *Solano Co.,* 114 Cal. App. 170 [299 Pac. 843], *People* v. *Shafer,* 130 Cal. App. 74 [19 Pac. (2d) 861], and *People* v. *Claggett,* 130 Cal. App. 141 [19 Pac. (2d) 805]. It is not necessary for us to analyze any of these last-mentioned cases, nor to quote any express language from any of them. A reading of them will convince the most casual that they are directly applicable to the facts before us. We are in perfect accord with the conclusion reached therein, and, in our opinion, the principles so announced should control the decision of the present case.

The defendant has indulged in certain criticism of the Corporate Securities Act, and has endeavored to show that its general purpose is opposed to the free exercise of the property rights of the individual and that its provisions are oppressive and burdensome. With the policy of the law, the courts are not concerned. It is the exclusive jurisdiction of another department of government to determine the

character and scope of the laws by which we are governed, and so long as that department keeps within its constitutional restraints the courts are without power or right to interfere with the exercise of that jurisdiction.

We might answer these criticisms of counsel and close the opinion with the following observation from the Supreme Court of the United States relative to the purposes of legislation of this character, and of the evils it is designed to correct, "It will be observed, therefore, that the law is a regulation of business, constrains conduct only to that end, the purpose being to protect the public against the imposition of unsubstantial schemes and the securities based upon them. Whatever prohibition there is, is a means to the same purpose, made necessary, it may be supposed, by the persistence of evil and its insidious forms and the experience of the inadequacy of penalties or other repressive measures. The name that is given to the law indicates the evil at which it is aimed, that is, to use the language of a cited case, 'speculative schemes which have no more basis than so many feet of "blue sky" '; or, as stated by counsel in another case, 'to stop the sale of stock of fly-by-night concerns, visionary oil wells, distant gold mines and other like fraudulent exploitations'. Even if the descriptions be regarded as rhetorical, the existence of evil is indicated, and a belief of its detriment; and we shall not pause to do more than state that the prevention of deception is within the competency of government and that the appreciation of the consequences of it is not open for our review." (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 550 [37 Sup. Ct. 217, 220, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514].)

The judgment is affirmed.

Langdon, J., Preston, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.