[Crim. No. 301.   Fourth Appellate District.—November 21, 1934.]

THE PEOPLE, Respondent, v. R. W. STEELE, Appellant.

Robert H. Patton for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The appellant was charged with grand theft and with a violation of the Corporate Securities Act, in that on or about July 15, 1933, he "did feloniously sell an instrument in writing evidencing an interest in a profit-sharing enterprise constituting a security under subdivision 7, section 2, of the Corporate Securities Act of the State of California, without the said defendant or anyone having applied for or obtained, from the Corporation Commissioner of the State of California, authority or permit so to do". On the first trial he was acquitted on the charge of grand theft and the jury disagreed on the other charge. A second trial on the charge of violating the Corporate Securities Act resulted in a conviction and this appeal is from the judgment which followed.

It appears that the appellant was the owner or holder of certain placer mining claims located in Inyo County, and also the owner of certain mining equipment. From some time in April, 1933, until July 15, 1933, the complaining witness, Simon Z. Dunn, was associated with the appellant in attempting to work these mining claims under some contractual relationship which is not here material. On the last-named date, these parties entered into a written agreement which is referred to in the information and which constitutes the purported security upon which this charge against the appellant is based. It is conceded that the appellant received from Dunn the sum of $250 at the time this agreement was executed and also that he had not obtained from the corporation commissioner any permit which in any way related to this transaction.

The determining question here is whether the written instrument in question constitutes a security within the meaning of the Corporate Securities Act. The agreement reads as follows:

"CONTRACT AND AGREEMENT FOR
LEASE OF PERSONAL PROPERTY.

"This Agreement by and between R. W. Steele, Lessor, Party of the First Part and the undersigned Simon Z. Dunn, Party of the Second Part, Witnesseth:

"That, whereas, the first party is the owner and/or holder of the right to possession of and in certain placer

mining claims and locations situate in and near that territory in Inyo County, California, known as Mazourka Canyon and its tributaries and is the owner and/or lessee of certain placer gold mining equipment, and

"WHEREAS, the second party is desirous of conducting gold mining operations as an independent contractor upon the property and claims now in possession of the first party and elects to make use of and rent for the purposes of such operation the equipment now in the possession of the first party:

"IT IS THEREFORE agreed the first party does hereby let and lease to the second party the use of placer equipment as hereinabove described subject to the conditions hereinafter set forth for a period of two years from the date hereof, the same to be used by the second party at the places and in the manner hereinafter set forth and not otherwise; the party of the second part may at his option renew this contract for two (2) years upon payment of one 00/100 Dollar ($1.00) to the party of the first part;

"1. In consideration of said use of equipment for said period, the second party agrees to pay as rent therefor the sum of $250.00 payable in advance concurrently with the execution hereof, and in addition thereto, agrees to pay to the lessor 96¼ per cent of the net proceeds of the mining operations that shall be conducted by the second party in accordance herewith continuously throughout the life of this lease; said net proceeds shall be calculated after the deduction from the gross proceeds of the operation of such equipment as shall be furnished to and used by the second party hereunder after the deduction by the first party of the following costs and expenses.

"(a) The sum of One 00/100 Dollar ($1.00) per day per machine for water to be furnished by first party.

"(b) Net cash cost of mining and delivering gravel to machines.

"(c) Actual cost of board furnished to second party.

"(d) Net cost of gasoline, oil and repairs to machines.

"2. In addition to the furnishing of the above mentioned equipment, the first party further agrees,

"(a) To locate and maintain said equipment in such location as to enable the second party to operate the same

in gold bearing gravel throughout the life of this lease except for such intervals as may be required for the removal of the same from zone to zone or as may be necessitated by unavoidable break-downs, floods, inclement weather, acts of God, or of the sovereign authority of the United States, or orders of court not occasioned by the first party.

"(b) The first party shall furnish a technical director who shall supervise and direct the mining operations of the second party and the second party expressly agrees that the said technical director shall have absolute discretion as to the times, places and manner in which the operations and work of the second party shall be conducted, said discretion shall be exercised with the view of obtaining the maximum return for the use of said equipment to both parties hereto.

"(c) The technical director shall allocate the equipment leased by the second party in the most favorable location available at the reasonable discretion of the technical director and priority in point of time of execution of the lease shall determine the relative rights of the second party and other lessees.

"3. The second party hereby expressly agrees that the first party shall have the right to let the use of the equipment hereby leased to second party to any other person or persons not exceeding twenty (20) in number including second party provided the use by such other persons shall be made subject to the direction of the technical director who shall act in the interest of all parties concerning such use and the second party agrees to cooperate with such other persons and with the technical director so as to obtain the maximum use and profit of said equipment, and if at any time the second party shall fail or refuse to so cooperate, the first party shall have the right and option to declare this lease terminated upon the payment to the second party the unearned portion of said rental, pro-rated according to the unexpired period of this lease. This is binding unto my heirs and assignees. R. W. Steele.

"R. W. STEELE,
"Party of the First Part
"SIMON Z. DUNN,
"Party of the Second Part.
"Dated this 15th day of July, 1933."

The respondent contends that this instrument is an "investment contract" within the meaning of that term as included in the definition of a security set forth in subdivision 7 of the act in question and, in support thereof, relies upon *People* v. *White*, 124 Cal. App. 548 [12 Pac. (2d) 1078], and *People* v. *Claggett*, 130 Cal. App. 141 [19 Pac. (2d) 805]. The instrument involved in the first of these cases was plainly an investment contract, but it differs so completely from the contract before us that the holding to that effect is of no value here. In the second case referred to, the written instrument provided that the investor, in return for his investment, was to receive a certain share or interest in the net proceeds from certain mining operations and should later receive a designated share of the capital stock of a corporation which was to be formed. In the case now before us the agreement contemplates no return on the money invested, other than the right to use certain property, and any anticipated profits could come only through the proceeds of operations to be conducted by the complaining witness himself.

While a "security", within the meaning of this act, may contemplate that a profit will accrue from the money invested, the expectation of such a result cannot, of itself, determine that an instrument is a "security". A person buying or leasing land or other property may expect to derive a profit from the money invested, but neither such a transaction nor the instrument by which it is evidenced may be designated as a security in the sense here intended. Generally speaking, at least, the term has no proper application to an enterprise which is to be conducted by the investor himself.

Under the contract now before us, the complaining witness could not expect any return from his money on account of anything done by others nor because of his investment alone. His profit must accrue, if at all, from operations conducted by himself and his return necessarily depended upon the success or failure of his own operations in attempting to mine gold at a profit.

The respondent argues that while this instrument is a lease in form, it has the effect of permitting the lessee to share in the profits of a mining enterprise to be conducted by the lessor. We cannot so read the agreement. It is

a lease of personal property with the right to operate the same on land owned or controlled by the lessor, and any possible profit could come only from the efforts of the lessee in the operations to be conducted by him. And we think the situation is neither affected by the fact that the appellant retained some control over the place where the operations were to be conducted nor by the fact that he was to receive, as part of the rental, a large share of the net proceeds.

Although the agreement here in question is obviously subject to criticism in many respects, we think it is not a "security" within the meaning of the Corporate Securities Act. While it must be conceded that this transaction was not without its earmarks of fraud, and even though it be assumed that another crime was in fact committed, we are of the opinion that the evidence will not sustain a conviction on the particular charge with which we are here concerned.

The judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 20, 1935.

Waste, C. J., and Shenk, J., voted for a hearing.