[Crim. No. 4316.   Second Dist., Div. Two.   June 7, 1949.]

THE PEOPLE, Respondent, v. JOHN HOSHOR, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Kent C. Rogers, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted by the court without a jury of eight violations of the Corporate Securities Act (Stats. 1917, p. 673; 2 Deering's Gen. Laws, Act 3814) appellant demands a reversal of the judgments on two grounds, to wit, (1) the evidence is insufficient and (2) the act as construed by the trial court violates due process of law and equal protection of the law guaranteed by the Fourteenth Amendment to the federal Constitution.

### THE CHARGE

It was charged that about September, 1947, appellant sold certificates of "beneficial interest in title to property, profits and earnings, more particularly described as a one-half interest in ownership and profits of a fresh fruit and vegetable juice bar, a business to be operated for profit . . . and a 10 per cent interest in the profits of any additional juice bars to be operated for profit and known as Fountain of Youth, without having first applied for and received . . . a permit so to do." The eight counts are substantially identical. In two of them the interest sold was less than half. The domicile of each business was at a separate location. The attention of each investor was attracted by an advertisement in a newspaper of general circulation, except in the case of the victim named in count II and he was introduced by his father to appellant about 30 days after the father had made his own investment. In each instance appellant entered into a limited partnership agreement in form similar to that on the margin

hereof[1] with appellant as a general partner and the investor as a limited partner, to operate a juice bar at a designated location, the latter to receive a share in the profits and an interest in the business. In one instance (count VIII) the investor was to receive a share in the profits only and that agreement was in form not one of a limited partnership but merely a receipt dated December 17, 1946, for $50 "for ½

[1]Exhibit six is the articles of copartnership with R. W. Bennett. Its applicable provisions are in substance or literally as follows:

1. Agreement to enter into a partnership for the manufacture and sale of juices.

2. Provides for the term of the partnership.

3. Provides for the firm name, to wit, "Fountain of Youth."

4. The street location of the business.

"5. JOHN HOSHOR has contributed services and will contribute further services towards the partnership, and R. W. BENNETT has contributed the sum of Twenty-five Hundred Dollars ($2500) to the partnership business, payment of which is acknowledged by JOHN HOSHOR.

"As consideration for the contribution of R. W. BENNETT, he shall receive a one-half interest in the capital and assets of the store situated at 5034 Hollywood Boulevard, Hollywood, California, and shall receive fifty per cent of the profits accruing at said store, and JOHN HOSHOR shall receive fifty per cent of the profits from said store.

"It is understood that additional stores may be opened from time to time, and R. W. BENNETT shall receive ten per cent of the profits received by JOHN HOSHOR from any other or additional juice bars. It is expressly understood and agreed that R. W. BENNETT shall be a limited partner and shall not be required to contribute any services towards the partnership business, and his liability shall, in no event, exceed the amount of his investment to the amount of Twenty-five Hundred Dollars ($2500)."

"6. JOHN HOSHOR shall be entrusted with the general management and control of the business and shall keep a true and correct account of all business transacted and shall diligently employ himself in the business of the partnership and be faithful to the other in all transactions relating to the firm and give, whenever required, a true account of all business transactions arising out of or in connection with the conducting of the business of the partnership. JOHN HOSHOR shall furnish a weekly accounting to R. W. BENNETT in connection with the store at 5034 Hollywood Boulevard, Hollywood, California, and shall furnish a periodic accounting of the business transacted from any future store.

"The partnership books shall be kept at the principal place of business of the partnership, and each partner shall have the right at all times to inspect and copy any of them and to have, on demand, true and full information of all things affecting the partnership affairs whenever circumstances render it just and reasonable.

"Money received by the partnership shall be deposited in a bank or banks to be selected by JOHN HOSHOR, and he may withdraw sums on deposit by his signature alone."

7. Inhibits the partner from selling, assigning or hypothecating his interest in the store without the written consent of the other. If Hoshor opens other stores he may admit other limited partners to share in them only.

"8. It is understood and agreed that JOHN HOSHOR shall not receive a salary or wage for his services, but his entire compensation shall be his share of the profits as aforesaid. It is contemplated by the parties hereto that the business might hereafter be incorporated. In the event that the business is incorporated as aforesaid, JOHN HOSHOR shall

profits in following accounts, statement and check in payment to be made starting once a week December 29." This is followed by a list of the names and addresses of 23 several concerns. Appellant's failure to issue a certificate of limited partnership to him may explain the meager sum of $500 received as contrasted with the $2,500 to $3,800 taken from the parties named in the first seven counts. In no instance did a purchaser recover a substantial part of his investment. Two or three received small sums for "salary." Under most of the agreements no juice bar was opened.

## THE APPLICABLE PROVISIONS

█ The issuance of the certificate of a limited partnership in a manner not authorized by the Civil Code (§§ 2478, 2501)[2] is one of the acts denounced by the Corporate Securities Act which provides in section 2(a), paragraph 7, that "the word 'security' shall include any stock, bond . . . certificate of interest or participation, certificate of interest in a profit-sharing agreement . . . .beneficial interest . . . or earnings. . . ."

█ Whether any particular instrument is. a security must be determined by its own contents and language No definition has yet been formulated that will apply to every case. Courts must look through form to the substance and determine whether the transaction contemplates the conduct of an enterprise by persons other than the investor who is to share in its profits and finally in its proceeds. █ An interest in such an enterprise is a security which under the act is not to be sold by the issuer without his first having obtained a permit from the Corporation Commissioner. (*People* v. *Daven-*

continue to devote his time and knowledge to the best of his ability to the business of the corporation, and his entire compensation shall be dividends and he shall not receive any salary or wage.''

9. Requires the surviving party in the event of the death of one of them to allow the personal representative of the decedent to participate in the conduct of the business until the interest of the decedent has been ascertained.

10. Provides that if Hoshor engages in the manufacture of juices he shall provide them to the partnership at the manufactured cost.

11. Bennett is granted an option to select a one-half interest in any future store opened by Hoshor in connection with the partnership business provided that upon his acceptance of the one-half interest in another store, his share of the profits in the first store shall be reduced from 50 per cent to 10 per cent.

[2]Section 2478 of the Civil Code provides for the contents of a certificate of a limited partnership to be filed in the county clerk's office. Section 2501 makes provision for the amendment and for cancellation of certificates of partnership and for the filing of same in the offices where the certificate is filed and recorded.

*port,* 13 Cal.2d 681, 684 [91 P.2d 892].) A security has been defined as an instrument which creates a present right to a present or a future participation in either the income, profits or assets of a business carried on for profit. (*People* v. *Oliver,* 102 Cal.App. 29, 36 [282 P. 813].)

Section 3 of the act forbids the sale by a "company"[3] of any security without first having obtained from the commissioner a permit, and section 18 makes a violation of section 3 a felony. Section 2(a) also makes "partnerships of every kind" a "company," whereby they are included within the inhibition of section 3. ▇ Not only is a partnership included as a "company," but an individual is also when he sells or negotiates for the sale of a security of his own issue. (Corporate Securities Act,[4] § 2(a), par. 6; *People* v. *Woodson,* 78 Cal.App.2d 132, 136 [177 P.2d 586].) The purpose of the act is to protect the public against the purchase of worthless securities and to this end the Legislature made the individual liable as a "company" when he is the issuer. (*People* v. *Craven,* 219 Cal. 522, 525 [27 P. 906].)

### THE EVIDENCE

▇ It follows that appellant was liable as a "company" when he sold the certificate of interest as an individual (count VIII) as well as when he sold the partnership interests (counts I to VIII) and issued certificates therefor. Having, as general partner, sold an interest in seven limited partnerships and in a business of which he was sole proprietor (count VIII) without first having obtained permits to do so, his guilt is clearly established. (*People* v. *Woodson, supra.*) The latter decision is a convincing precedent. On the investor's answering Woodson's advertisement, the latter stated that he had a lease on a ranch which was to be operated by a club with members and that he desired to sell one-fifth interest therein. On his payment of $2,000 the purchaser was to receive 20 per cent interest in all transactions of Woodson and a monthly salary of $300. At the same time he should receive Woodson's note for $2,000 and a certificate of limited partner-

---

[3]Deering's General Laws, Act 3814. Corporate Securities Act. Section 2(a), paragraph 3. "The word 'company' includes all domestic and foreign private corporations, associations, syndicates, joint stock companies, and partnerships of every kind, trustees as hereinafter defined, and also individuals as hereinafter defined."

[4]"The word 'individual' insofar as it is included in the definition of a 'company,' includes only persons selling, offering for sale, negotiating for the sale of or taking subscriptions for any security of their own issue."

ship showing the investor to be the special partner and Woodson as the general partner. Notwithstanding Woodson's protestations and his ingenious efforts to conceal the true nature of his agreement the court held it to be a violation of the act.

Appellant's sales do not materially differ from those of Woodson or of Dutton (see 41 Cal.App.2d 866, 869 [107 P.2d 937].) Theirs were not ordinary commercial transactions. Neither were they investors lending money at specified rates. Their contracts were of the same character as those of the victims named in the first seven counts herein.

The evidence of the interests sold by appellant is the written contracts of special partnerships; they were offered for sale to the public by advertisements in newspapers; they were sold to constituents of the public; they evidenced the investors' rights to participate in the profits and assets of the partnerships; and the profits were to be realized by means of the efforts of others and not through the buyers' industry or skill. The sales in every case were initiated by an ''advertisement'' which is forbidden to the same extent as is a direct offer to sell. (Corporate Securities Act, par. 8, § 2(a).)

## APPELLANT'S AUTHORITIES

The authorities cited by appellant in support of his contention that the judgments are not supported by the evidence or by a reasonable interpretation of the act (*People* v. *Davenport,* 13 Cal.2d 681 [91 P.2d 892]; *Buttrick* v. *Seines,* 209 Cal. 567 [289 P. 616]; *Staples* v. *Leidecker,* 216 Cal. 604 [15 P.2d 514]; *Creasey Corp.* v. *Enz Bros. Co.,* 177 Wis. 49 [187 N.W. 666]; *People* v. *Steele,* 2 Cal.App.2d 370 [36 P.2d 40]) are readily distinguishable by their facts. None of them parallels the Woodson or the Dutton decisions. Neither are their facts similar to those at bar. Davenport was accused of selling securities ''in the form of a series of agreements'' for the sales of properties, the deferred payments to bear seven per cent interest. *Buttrick* v. *Seines* was prosecuted under the act as it read in 1917 and before an individual issuer was required to secure a permit. *Staples* v. *Leidecker,* decided in 1932, involved a preorganization agreement, made and accepted upon the condition that the corporation would with reasonable diligence procure a permit. In *People* v. *Steele* the contract provided that the investor should work. In the instant action seven contracts provided that the work should be done by appellant and the investor's only return was to be a percentage of the profits while the eighth in-

vestor (count VIII) was to do nothing but receive the "return from the half interest" of a juice bar business.

### No Violation of Due Process

The contention that the right of due process of law and of equal protection of the law are violated by the act as applied has been completely answered by *People* v. *Eisman*, 78 Cal.App. 223, 249 [248 P. 716]. The court there held that while it is true that the act burdens honest business, such burden is for the very good and only reason that "under its forms dishonest business may not be done." To defeat the latter the state cannot rely upon its own declarations of policy or upon the mere promises of operators. Conditions must be imposed and their performance enforced notwithstanding inconveniences caused to honest men. For sovereignty to abandon its watch-care of society and to confess its inability to guard honest men against the plunderers because, forsooth, an occasional good citizen might be inconvenienced, would be to signify its utter helplessness to protect the very men who constitute the state. (*Merrick* v. *N. W. Halsey & Co.*, 242 U.S. 568, 585 [37 S.Ct. 227, 61 L.Ed. 498]; *Agnew* v. *Daugherty*, 189 Cal. 446, 449 [209 P. 34].) The Corporate Securities Act was conceived for the purpose of providing a procedure "for the enforcement of constitutional safeguards to the purchasing public." Not only is it a bulwark against fraudulent practices of those who seek to gain from the ruin or expense of others but is a companionate guide for honest brokers and investors in the issuance and sale of securities to, and purchases by, the public. (*Daugherty* v. *Riley*, 1 Cal.2d 298, 305 [34 P.2d 1005]; *People* v. *Kuder*, 93 Cal.App. 42, 50 [269 P. 198, 630].)

Appellant quotes generously from *People* v. *Pace*, 73 Cal. App. 548, 561 [238 P. 1089], in support of his claim that the act violates the Fourteenth Amendment. That decision does not apply. The securities Pace sold were his in bona fide ownership and were sold for his own personal benefit. Moreover, subdivision 3 of section 2(c) of the act was amended after the reversal of *People* v. *Pace*. Later decisions upheld the new provisions which require the individual owner of securities to obtain a permit before offering them for sale. (*People* v. *Claggett*, 130 Cal.App. 141 [19 P.2d 805]; *People* v. *Shafer*, 130 Cal.App. 74 [19 P.2d 861]; *Black* v. *Solano Co.*, 114 Cal. App. 170 [299 P. 843].)

The Corporate Securities Act is not unconstitutional in any sense. It deprives no one of his right to acquire, own or sell

property, but merely constrains conduct for the purpose of protecting the public against speculative schemes and plans for piracy, fraud and unjust enrichment. The prevention of loss or injury to the innocent by the ruthless will of the enemies of society or of the archaic-minded is an obligation of the state whose judgment is supreme. (*Hall* v. *Geiger-Jones Co.*, 242 U.S. 539, 551 [37 S.Ct. 217, 61 L.Ed. 480]; *Barnhill* v. *Young*, 46 F.2d 804, 805.)

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 7, 1949.