[Crim. No. 5220. In Bank. Sept. 28, 1951.]

THE PEOPLE, Appellant, v. MILTON SYDE et al.,
Respondents.

Fred N. Howser and Edmund G. Brown, Attorneys General, Frank Richards, Deputy Attorney General, William E. Simpson and S. Ernest Roll, District Attorneys (Los Angeles) and H. L. Arterberry, Deputy District Attorney, for Appellant.

Garner, Lillie & Bryant and George M. Bryant for Respondents.

SHENK, J.—On March 8, 1950, the district attorney of Los Angeles County filed an information against the defendants Milton and Harry Syde charging them in one count with conspiracy to violate the Corporate Securities Law (Corp. Code, § 25000 et seq.), and in 15 other counts with violations of the law by alleged sales of securities without first having obtained a permit from the Commissioner of Corporations. After a preliminary hearing in the municipal court the defendants were held to answer on each count. On their arraignment in the superior court they moved pursuant to section 995 of the Penal Code to set aside the information as to all counts on the ground that the commitment was without reasonable or probable cause. The motion was granted as to all counts except count 1.* The People appealed from the order granting the motion.

The facts are not disputed. Milton Syde Films, Inc., was incorporated in July 1949 for the purpose of engaging in the business of making, producing, buying, selling and dealing in dramatic exhibitions for radio, stage, motion pictures or television and related activities. Milton was president and Harry secretary-treasurer. The corporation thereupon published a certificate of the conduct of a theatrical arts training school and production business on Santa Monica Boulevard in Hollywood under the name of Rossmore Productions.

---

*As to this count the defendants thereupon pleaded "not guilty" and August 21, 1950, was fixed for the trial on that count. The sufficiency of the showing as to count 1 is not in issue here.

Some of the complainants received postcards from the "casting dept." of Rossmore Studios addressed to a child in the family whose photograph it is indicated had been seen in a portrait studio or elsewhere. The postcard informed the child that he or she would be considered for a motion picture film and requested a definite appointment. The parent took the child to the studio, where the child was accepted under a contract signed by the parent and one of the defendants. In one type of contract the artist (child) agreed to devote his efforts in the production of a film to be directed by Rossmore with pretraining of a selected cast not in excess of 25 members for a minimum of 16 rehearsals. The contract called for a down payment of $15 by the parent and payment of the balance at the rate of $5.00 per rehearsal until a total of $98 was paid. Rossmore had the option of rejecting any cast member and refunding the money if the artist did not qualify. It was also provided that upon the sale or other disposition of the film 60 per cent of the gross receipts would be distributed equally among the cast members. Rossmore was to pay all costs and expenses of the production. Another type of contract provided for participation by the artist in a minimum of one television sound film and called for payment of a total of $198, with a down payment of $100 and $7.00 for each rehearsal. From the receipts of sale of the television film there was to be deducted the expense of sale. The balance was to be deposited in a "reimbursement fund" from which 60 per cent was to be distributed to the members of the cast but not in excess to any one member of the contract payment of $198.

Down payments and installment payments at each rehearsal attended were made as required. The parents accompanied the children to the rehearsals but were not permitted in the rehearsal studio. The record does not show whether films were actually made.

The question is whether the contracts constituted securities within the meaning of the Corporate Securities Law.

Section 25008 of the Corporations Code defines "security" in part as "any certificate of interest in a profit-sharing agreement" and "any transferable share, investment contract, or beneficial interest in title to property, profits, or earnings." Section 26104 makes the act of selling securities without compliance with the statutory requirements a punishable offense. Noncompliance by the defendants is not disputed.

If the contracts entered into with the various "artists" are not securities within the foregoing definition, there was not probable cause for holding the defendants to answer and the granting of the motion pursuant to said section 995 was proper. The plaintiff contends that the contracts are securities because they constitute an interest in a profit-sharing agreement, or in profits or earnings.

The Corporate Securities Law does not contain an all-inclusive formula by which to test the facts in every case. And the courts have refrained from attempting to formulate such a test. Whether a particular instrument is to be considered a security within the meaning of the statute is a question to be determined in each case. In arriving at a determination the courts have been mindful that the general purpose of the law is to protect the public against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and the securities based thereon. (*In re Hatch*, 10 Cal.2d 147, 151-152 [73 P.2d 885] and cases cited.) But likewise the courts have followed the differentiation implicit in the statutory language between an interest in a profit-sharing agreement, or in profits and earnings, and the agreement itself of active participation in an enterprise although some monetary return be expected therefrom.

An agreement to render personal services for compensation cannot be considered a security, even though the sale of a beneficial interest in such an agreement may come within the statute.

It is settled that the Corporate Securities Law was not intended to afford supervision and regulation of instruments which constitute agreements with persons who expect to reap a profit from their own services or other active participation in a business venture. Such contracts are clearly distinguished from instruments issued to persons who, for a consideration paid, stipulate for a right to share in the profits' or proceeds of a business enterprise to be conducted by others; and the court will look through form to substance to discover whether in fact the transaction contemplates the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers are to share. (*Domestic & Foreign Pet. Co., Ltd.* v. *Long*, 4 Cal.2d 547, 555 [51 P.2d 73]; *People* v. *Davenport*, 13 Cal.2d 681 [91 P.2d 892]; *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 727 [134 P.2d 777]; *People* v. *Steele*, 2 Cal.App.2d 370, 374-375 [36 P.2d 40]; *Hollywood State Bk.* v. *Wilde*, 70 Cal.App.

2d 103, 107 [160 P.2d 846]; *People* v. *Hoshor,* 92 Cal.App.2d 250, 253 [206 P.2d 882].) Disagreement has not arisen in connection with the foregoing principles, but only with their application in specific cases.

 In their essence the agreements here are for the rendition of compensated services by both parties to the contract. Services in training the artist for dramatic production are to be rendered by the defendants for a stated fee; and services are to be rendered by the artist by participation in the film or other dramatic production in return for a share in possible profits to be realized from the sale thereof. The substance of the transactions is an investment in dramatic training of and participation by the artist as a member of the cast of a film or television drama to be produced and sold. The artist invested in returns from his training and actual participation in the production of a film if profits were realized from a sale thereof. It was not contemplated that he was to play the passive role of an investor only. True the direction in the production and the marketing of the film lay exclusively in the management of the defendants. But the film from which the artist was to profit could not be produced without his actual participation as a member of the cast. In the event he was considered not qualified for participation, his money was to be refunded.

In the light of the foregoing the contracts are neither certificates of interest in a profit-sharing agreement nor transferable shares, investment contracts, or beneficial interests in title to property, profits or earnings as contemplated by the Corporate Securities Law. The expectation of financial return to the artist might have been raised by hopes falsely induced. But since the agreement contemplates actual participation by the artist in the film from which he may realize profit, it cannot be considered as a security within the meaning of the statute; and neither numbers of participants nor possible fraud in its creation may transmute the instrument into a security which in legal effect it is not. If fraud be involved redress must be found elsewhere than in the penal provisions of the Corporate Securities Law. (*Cf. People* v. *Steele, supra,* 2 Cal.App.2d at p. 375.)

The order is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.