COMMERCIAL TRADING CORPORA-
TION and J. A. Mermis III, et
al., Appellants,

v.

H. E. SEARSY et al., Appellees.

No. 8320.

Court of Civil Appeals of Texas,
Texarkana.

March 1, 1977.

Rehearing Denied April 5, 1977.

Application for Writ of Error Granted by
Texas Supreme Court July 27, 1977.

Walker, Bishop & Larimore, Tom L. Larimore, Fort Worth, Sessions, Sessions, Neill, Scucchi & Hatch, W. R. Sessions, Dallas, for appellants.

Dean Carlton, Dallas, for appellees.

RAY, Justice.

The original opinion of this Court is withdrawn and the following opinion is substituted.

This is a case involving commodity options. H. E. Searsy and others, appellees (plaintiffs), brought a class action against appellants (defendants), Commercial Trading Corporation (CTC); Standard Trading Corporation (STC); Whitley R. Sessions, court-appointed receiver of Commercial Trading Corporation and Standard Trading Corporation; J. A. Mermis, III; James W. Grafton and J. W. Estes, for recision and damages resulting from alleged violations of the Texas Securities Act and the Federal Securities Act of 1933 in connection with the purchase by appellees of commodity options from appellant Commercial Trading Corporation.

Trial was to a jury and appellees were granted judgment against appellants jointly and severally in the sum of One Hundred Eighty-seven Thousand Seven Hundred Fifty-eight Dollars Eighty Cents ($187,758.80). W. R. Sessions, receiver, has perfected his appeal and submits nine points of error for our consideration. The other appellants submit seven points of error in their appeal.

In 1974 the United States Congress enacted the Commodity Futures Trading Commission Act of 1974, P.L. 93–463, 88 Stat. 1389, 1 U.S.Code Cong. and Admin. News, p. 1589 (1974), 7 U.S.C.A., Sec. 1–17b, which became effective on April 21, 1975. The Act preempted the field by giving the Commodity Futures Trading Commission exclusive jurisdiction with respect to the regulation of the sale of commodity options. The instant case arose before the effective date of the Act so the Act does not apply to this case. The issues presented to us, however, will be examined for the applicability of the Texas Securities Act (Tex.Rev.Civ. Stat.Ann. Art. 581–1, et seq.) and the Federal Securities Act of 1933 (15 U.S.C.A., Sec. 77b(1) (1971), et seq.). *State v. Monex International, Limited,* 527 S.W.2d 804 (Tex.Civ.App. Eastland 1975, writ ref'd); *Clayton Brokerage Co. of St. Louis, Inc. v. Mouer,* 520 S.W.2d 802 (Tex.Civ.App. Austin 1975, writ dism'd); *Clayton Brokerage Co. of St. Louis, Inc. v. Mouer,* 531 S.W.2d 805 (Tex.1975).

The appellees, investors in commodity options, alleged that the commodity options sold to them were securities that were not registered under the Texas Securities Act or the Federal Securities Act of 1933, and that the sales were induced by false, misleading and deceptive practices made by CTC and its agents in violation of the Texas Deceptive Trade Practices and Consumer Protection Act (Tex.Bus. & Comm. Code Ann., Sec. 17.41, et seq. (Supp. 1976–1977)).

In answer to sixty-two special issues, the jury found several instances of untrue representations made by CTC to the investors which were intended to induce the purchase of commodity options and which were in fact relied upon. However, in answer to Special Issue No. 26, the jury found that Commercial Trading Corporation had represented that the commodity options were not securities. In answer to Special Issue No. 53, the jury found that the commodity options sold by CTC were not investment contracts. An investment contract was defined in the court's charge as "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

A threshold question on appeal is whether or not the commodity options sold by Commercial Trading Corporation constituted "securities" under Texas or Federal Law. Liability of the individual appellants depends solely on a finding of their violation of the securities laws since they are not alleged to have perpetrated any fraud or deceit.

■ An action under the securities laws has a greater reach than does an action for fraud. Texas has an expansive and stringently applied rule for determining which individuals are liable for the sale of securities. A seller may be found in violation of the securities laws if he forms any link in the chain of the selling process or if he performs any act by which a sale is made. *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956); *Christie v. Brewer,* 374 S.W.2d 908 (Tex.Civ.App. Austin 1964, writ ref'd n.r.e.). See the Comments to the 1963 Amendment of Article 581–33, Tex.Rev.Civ.Stat.Ann.

The appellees (plaintiffs) did not submit a special issue inquiring whether or not the individual appellants performed any act by which sales were made or whether they in any way participated in the selling process. The evidence does not establish as a matter of law that the individual appellants formed any such link in the chain of the selling process or performed any acts by which sales were made. However, assuming, but without deciding, that the individual appellants as directors of CTC should be considered a link in the chain of the selling process because they knew that unregistered commodity options were being sold and their names were being used in advertising literature to induce the sales, then the classification of the commodity options in this case as securities would therefore be of pivotal importance to the issue of the liability of the three individual appellants.

Commodity options are not specifically included within the statutory definitions of "security". Tex.Rev.Civ.Stat.Ann. Art. 581–4; 15 U.S.C.A. 77b(1). The definitions do, however, include as securities both "investment contracts" and "evidence of indebtedness". The options sold by CTC must be examined to ascertain possible inclusion under either term which would lead to the options being classified as "securities".

■ "Evidence of indebtedness" has been interpreted to include "all contractual obligations to pay in the future for consideration presently received." *United States v. Austin,* 462 F.2d 724, 736 (10th Cir. 1972).

We have concluded that the commodity options in the present case were not evidences of indebtedness. They were simply contracts in which CTC agreed to obtain commodity futures for the customer if and when the customer exercised his options. Though it has been held in *King Commodity Company of Texas, Inc. v. State,* 508 S.W.2d 439 (Tex.Civ.App. Dallas 1974, no writ) and in *Securities and Exchange Commission v. Continental Commodities Corporation,* 497 F.2d 516 (5th Cir. 1974), that a commodity option may become an evidence of indebtedness, the facts do not call for such a conclusion in this case. In *King,* the options were sold as "guaranteed" obligations of King to pay money to its customers. In *Continental,* it was necessary for the company to issue certain promissory notes to its customers, evidencing monies due by Continental to its customers. In the instant case, no such facts were present to preclude application of the general rule that a commodity option is not an "evidence of indebtedness". *United States v. Jones,* 182 F.Supp. 146 (W.D.Mo.1960); *Hiller v. Olmstead,* 54 F.2d 5 (6th Cir. 1931).

It is well settled that an "investment contract" requires an investment of money in a common enterprise with profits to come solely from the efforts of others. *Securities and Exchange Commission v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), 163 A.L.R. 1043 (1946); *Koscot Interplanetary, Inc. v. King,* 452 S.W.2d 531 (Tex.Civ.App. Austin 1970, writ ref'd n.r.e.). The appellants deny that either the community-of-interests (common enterprise) or the efforts-of-others requisites is met by their mode of operation.

The facts surrounding appellant's operations are not in dispute. CTC was engaged in the sale of commodity options. Each investor would enter into a contract with CTC which stipulated the contract to be of a speculative nature and not a security. The investors would deal only with CTC, which acted as broker, buyer, seller and source of payment on the exercise of the options. The investors were advised that the commodity options they were about to

purchase were not registered in the State of Texas.

An analysis of the evidence shows that each of CTC's customers purchased his options separately. None was investing in CTC or STC, and the measure of profits realized on the options was not related to the success of appellants or to that of any other customer. The customers had nothing in common with each other except the same broker. Profit was related to the fluctuating market price of the chosen commodity.

The customers were not entitled to participate in any way in the earnings of CTC. Commercial Trading Corporation did not accept any discretionary accounts so it did not manage its customer's funds. Each investor decided which option to purchase and when and if it should be exercised. Any profit to the investor would be determined by a coordination of the exercise of the option within the fluctuations of the commodity market. When prices rose or fell beyond the amount of the premium paid to CTC, an investor could exercise his double option accordingly to sell or buy. His profit would be the difference between the market price at the time the option was exercised and the amount of his premium. The financial well-being of the corporate defendants had nothing to do with the amount of profits to which customers became entitled. There is no fact-finding nor was there any issue submitted to the jury which found that the customers were relying on the efforts of STC to generate funds from its hedging operation with which to pay any customer or to provide funds to CTC with which to pay the customer. Neither is there any evidence of any contractual relationship between an investor and STC. The sales literature which the investor received indicated that the brokerage firm being used for hedging purposes was Kohlmeyer & Company of New Orleans, Louisiana. We conclude there was no evidence to establish that the investor was relying on STC to provide a sinking fund or auxiliary fund out of its hedging operations with which to provide money to CTC to pay investors. Neither does the evidence establish that the investor was induced to purchase his commodity option on the basis that profits earned would be paid out of auxiliary funds generated by STC, or that the funds in STC would be used as a guarantee that CTC would always have enough money with which to pay the investor.

CTC and STC comingled their funds. The accounting indicates that about 70% of the gross receipts from premium payments was credited to STC as a hedging pool, while the remainder was exhausted in overhead expenses. Working from the hedging pool, STC would make investment of hopefully high yield both in and out of the commodities market. Ultimately, STC was called upon to pay out more to CTC than it was able to realize on its investments. However, the evidence does not indicate that the investors knew of this operation or in any way relied upon it as an inducement to purchase commodity options.

The report of the court appointed Master indicates that the sale of new options by CTC was becoming a prerequisite to honoring the exercise of the old options. However, the corporate appellants were placed in receivership while still solvent and before any options were dishonored.

■ The traditional test of a "security" or "investment contract" contains four essential elements:

(1) an investment of money;

(2) a common enterprise;

(3) the expectation of profits; and

(4) that the profits will be derived solely from the efforts of the promoter or third party.

Without the existence of all four, there is no investment contract, and hence no security requiring registration under state or federal law. Requirements 1 and 3, the investment of money and the expectation of profits, are undisputed. Elements 2 and 4, common enterprise and profits derived from the efforts of others, have been highly contested.

The Dallas Court of Civil Appeals, in *King Commodity Company of Texas, Inc. v.*

*State,* supra, stated in reference to a "common enterprise" the following:

"It is a reasonable inference from this evidence that the money necessary to hedge each option could come only from pooling of the premiums paid by other customers and that if King's use of this money in its trading operations was not profitable, no funds would be available to pay customers their profits. Thus the trial court would have been justified in finding, and we presume that it did find, that the evidence establishes a 'common enterprise' within the Howey test."

The appellants have argued that the "common enterprise" requisite is defeated in the present case because each commodity option was unitary, unaffected by the success or failure of all others. We disagree. The authorities seem split on whether commonality is required among investors, or between investor and promoter. In support of requiring commonality among investors, the appellants cite *Milnarik v. M–S Commodities, Inc.,* 457 F.2d 274 (7th Cir. 1972). The better view, however, seems embodied in *Securities and Exchange Commission v. Continental Commodities Corporation,* supra, and the authorities cited therein. In an opinion specifically repudiating *Milnarik,* the court stated in *Continental* the following:

"[T]he fact that an investor's return is independent of that of other investors in the scheme is not decisive. [*SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir. 1974)] . . .

. . . . .

. . . [T]he critical inquiry is confined to whether the fortuity of the investments collectively is essentially dependent upon promoter expertise. . . ."

■ The sale of a simple commodity option is not the sale of an investment contract where the purchaser's only source of profit is the commodities market itself. *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 253 F.Supp. 359, 366 (S.D.N.Y.1966); *McCurnin v. Kohlmeyer & Co.,* 340 F.Supp. 1338, 1341 (E.D.La.1972). The sale of commodity options is the sale of invest- ment contracts when the investors' contributions are pooled by the dealer so that the source of profit becomes not only the commodity market but also the trading operations of the market dealer. *King Commodity Company of Texas, Inc. v. State,* supra; *Clayton Brokerage Co. of St. Louis, Inc. v. Mouer,* supra.

■ The facts of the present case meet the test of "common enterprise" as set out in *King,* supra, and *Clayton Brokerage,* supra, but we have concluded that the facts are insufficient to establish the second requirement of the Howey test, that is, that the investor be led to expect profits solely or substantially from the efforts of the promoter or a third party. The critical element, then, is the dominance of the promoter over the enterprise as a whole in determining whether or not the investor was led to expect his profits solely from the efforts of the promoter.

In *King,* the options were exercised by the promoter without further instructions from the customer whenever the market price reached the point at which the amount of profits previously determined could be realized. There, promoter dominance was paramount. The court stated:

"In short, the evidence shows that after the original transaction no effort or participation on the part of the customer was necessary in order to realize a profit, although the customer could elect to make his own decision as to the time of exercising his option."

In *Clayton Brokerage,* supra, the court concluded that the promoter's scheme was commonly known in the trade as the management of discretionary accounts in which the investor's account is managed and supervised solely by the promoter even though the customer may have a legal right to participate in the commodity trading. There, the customers looked to the promoter for their profits.

In the present case, the appellants neither sold interests in a profit-sharing scheme nor did they manage an investment pool's interest in options. Commercial

Trading Corporation did not accept any discretionary accounts so it did not manage its customer's funds. Appellant CTC sold individual commodity options and placed itself between the investors and the market by making itself the source, but not the measure, of profits to be paid. There is no evidence of a profit-sharing scheme in which the measure of profits of the investors fluctuates with the profits of the promoter. Profit sharing is a key element which can determine whether a contractual obligation is a security or not. 69 Am. Jur.2d, Securities Regulations, Sec. 26, p. 1088. It has been held that where the element of profit sharing is absent, there is no security. *People v. Hoshor,* 92 Cal. App.2d 250, 206 P.2d 882.

The operations of CTC more closely resemble that of the sales of single individual options rather than the management of an investment pool or a profit-sharing scheme. What the promoters were managing, STC's hedging operations, the investors had no interest in; and what the investors had an interest in, the commodities market, the promoters were not managing. We therefore conclude that the evidence supports the jury's finding in answer to appellees' Special Issue No. 53, that the commodity options sold by CTC were not investment contracts because the requirement of the Howey test, expectation of profits solely from the efforts of the promoter, was not met. The trial court erred in disregarding the jury's finding.

■ Appellees alleged that they had been defrauded by appellants. The jury found in response to special issues related to fraud that the following misrepresentations of material facts were made by CTC to induce investors to purchase commodity options and were in fact relied upon:

Special Issue No. 1. That the operations of Commercial Trading Corporation were adequately funded.

Special Issue No. 7. That all purchasers were assured of payment.

Special Issue No. 13. That appellants had sufficient margin on deposit with Kohlmeyer & Company to cover all purchases.

Special Issue No. 19. That all purchases through appellants were hedged with Kohlmeyer & Company, New Orleans, Louisiana.

The jury found that the following material fact was not disclosed:

Special Issue No. 41. That the recovery of the funds invested was dependent upon the success of appellants' business as continuing to find additional investors.

The appellees pleaded that the foregoing misrepresentations and failure to disclose were in violation of the Texas Deceptive Trade Practices and Consumer Protection Act. However, no evidence was offered by appellees which would tie these allegations to any pecuniary loss. Neither was there a prayer for relief on these allegations.

A necessary element in a cause of action for fraud or deceit is pleading and proof that the complaining party suffered a pecuniary loss. 2 McDonald's, Texas Civil Practice, Sec. 6.17.1, pp. 121, 122. Nominal damages are not awarded in deceit actions, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been, as where he receives all the value that has been promised and for which he has paid. Prosser, Law of Torts, p. 731 (4th ed. 1971). In fraud and deceit cases the gist of the action is the showing of actual damage and hence, without pleading and proof of actual damage, the case will fail and nominal damages will not be allowed.

This case was tried in heavy reliance on the strict liability theory of appellants' failure to register the commodity options under the state and federal securities laws. The appellees have not connected their losses on the commodity market with the misrepresentations alleged to have been made by the promoters-appellants.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing.